**UNITED STATES of America,**
**Appellant,**

v.

**Gregory J. MRAZ and Winifred Mraz,**
**Appellees (two cases).**

**Nos. 5696, 5755.**

United States Court of Appeals
Tenth Circuit.

April 18, 1958.

John Laughlin, Washington, D. C. (Joseph D. Guilfoyle, Washington, D. C., James A. Borland, Albuquerque, N. M., Paul A. Sweeney and Donald L. Young, Washington, D. C., were with him on the brief), for appellant.

Charles C. Spann (of Grantham, Spann & Sanchez), Albuquerque, N. M., for appellees.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

In this proceedings against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 and 2674, the question for decision is whether an officer of the armed forces, proceeding from one permanent duty station to another, in his own automobile, was "within the scope of his office or employment" at the time of an accident in which plaintiff-appellees were injured. No question of negligence is presented on appeal, and the parties agree that the law of New Mexico, as the place of the accident, is controlling. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761; Rayonier, Inc., v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed. 2d 354.

The undisputed facts are that Vanden-Huevel, an Air Force lieutenant stationed in California, received orders changing his permanent duty assignment to an air base in New Mexico. The special order authorized transportation either by commercial carrier or by privately owned conveyance, but in any event to arrive by March 5, 1954. If private transportation was used, four days travel time was allowed and mileage reimbursement authorized. The said travel as directed was deemed "necessary in the military service".

Vanden-Huevel and his wife departed their California base on February 27, 1954, and after intervening stops at Las Vegas, Nevada; Grand Canyon, Arizona; and Holbrook, Arizona, they arrived at Gallup, New Mexico on March 4, the date of the accident. They departed Gallup on Route 66, admittedly the most direct route for the ordered transfer, and the accident occurred some distance west of Albuquerque, where the officer planned to spend the night, and to proceed to his Clovis, New Mexico base the following day.

On these facts, the trial court concluded that the accident occurred in the scope of the officer's employment by the United States, and accordingly held it liable for injuries to appellees.

Questions of liability under the doctrine of respondeat superior for negligent or wrongful acts done in the scope of employment have arisen under an infinite variety of facts and circumstances, with almost equally diverse results. Sometimes the answer seems to turn on how the question is put. New Mexico has not had occasion to consider liability under the precise facts involved here, but it has long since adopted, and continues to adhere to, the general rule of agency, which holds the master liable for the acts of his servant if " * * * it be done while the servant was engaged upon the master's business * * * with a view to further the master's interest * * * and did not arise wholly from some external, independent, and personal motive on the part of the servant * * *." See Childers v. Southern Pac. Co., 20 N.M. 366, 149 P. 307, 308, citing Mechem on Agency, 2d Ed., Sec. 1960; see also Archuleta v. Floersheim Mercantile Co., 25 N.M. 632, 187 P. 272, 40 A.L.R. 199; Miera v. George, 55 N.M. 535, 237 P.2d 102. We took this view of the New Mexico law in White Auto Stores v. Reyes, 10 Cir., 223 F.2d 298; and it was confirmed in the kindred case of Lucero v. White Auto Stores, 60 N.M. 266, 291 P.2d 308, arising under the New Mexico Workmen Compensation Law, 1953 Comp. § 59–10–1 et seq. Making application of this liability concept, courts have generally held a master liable for the wrongful acts of his servant committed while driving his own automobile, when such acts were done or committed in furtherance of the master's business, and while such self-owned automobile was being driven with the express or implied consent of the master. See cases collected Annotation, 52 A.L.R. 287.

Specifically, it has been held, following North Carolina law, that an army officer traveling from one permanent base to another, in his privately owned automobile under orders authorizing the use of such automobile, with reimbursement for nearest route mileage, and also authorizing delay en route for leave purposes, was not acting within the scope of

his employment when he was involved in an accident. United States v. Eleazer, 4 Cir., 177 F.2d 914. The court was convinced that driving his own automobile on deferred leave while en route home was not within scope of his employment although at the time of the accident he was also upon the nearest route to his new base. The court stressed the fact that the government did not select the means of transportation and had no control over the operation of the means chosen; and grounded its ultimate decision on the application of the principle that respondeat superior applies only when the relationship of master and servant exists, and the wrong complained of and for which the master is sought to be held liable is committed in respect to the very transaction out of which the injury arose. The same rule was applied in the same court, with the same result, in United States v. Sharpe, 4 Cir., 189 F.2d 239, where, at the time of the accident, the soldier was traveling in his own automobile from one base to another at his own expense without allowance of mileage and under a pass which imposed no duty upon him except to report to the new base on a fixed date. The distinguished trial judge, writing for this court in Leonard v. United States, 10 Cir., 235 F.2d 330, construing Wyoming law, also stressed the right of control with respect to the employment directly connected with the liability sought to be enforced. And, applying that test, we concluded that the officer, although driving a government owned vehicle, was actually on a mission of his own when the accident occurred. See also United States v. Campbell, 5 Cir., 172 F.2d 500; Hinson v. United States, D.C., 156 F. Supp. 831.

A different result was reached under somewhat similar facts in United States v. Kennedy, 9 Cir., 230 F.2d 674, 675. In that case, the soldier was authorized to use his own automobile from one base to another and to take ten days leave in Seattle, Washington, followed by four days travel time to his new base a thousand miles away. Before the expiration of his leave time, but while he was proceeding to his new base as directed, he was involved in an accident. Holding the government liable, the court quoted from a Washington state case to the effect that "where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured; but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master." See Carmin v. Port of Seattle, 10 Wash. 2d 139, 116 P.2d 338, 344. See also Restatement on Agency, § 530.

These decisions demonstrate the divergence in federal case law, depending upon controlling state authority, and the predilections of the court. There is doubtless a philosophical divergence in the theory that a master is not liable for the wrongful acts of his servant, unless done in respect to the very transaction out of which the injury arose, and the theory that a master is liable for his servant's negligent acts if done while engaged in the master's business and did not arise from some external, independent and personal motive on his part. The conceptional approach of the two courts may have very well led to different results in the same setting. But even so, we think there is a demonstrable difference between the relationship of an army officer traveling from one permanent base to another at government expense, with leave en route, and one without leave whose travel is expressly "deemed necessary in the military service." In the former instance, the officer's only duty is to report at a certain place at a certain time; while in the latter, his time belongs to the government and is measured out to him. If the officer in our case had been traveling in a government owned vehicle under the same circumstances, there could be no doubt of the liability of the government for his acts. Surely the result should be no different when he is driving his own vehicle with the express

consent of the government. To paraphrase New Mexico law, the accident occurred while the officer was engaged upon government business in furtherance of the government's interest. It did not arise wholly from some external, independent and personal motive on the part of the officer, and the judgment is affirmed.