Hazel E. COURTRIGHT and Leslie Courtright, Plaintiffs,

v.

Alfred PITTMAN and the United States of America, Defendants.

Civ. A. 66–C–47.

United States District Court
D. Colorado.

Jan. 18, 1967.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

This matter is before the Court on the motion of defendant United States of America for summary judgment. The sole question presented by the motion is whether defendant Alfred Pittman, a serviceman in the United States Army, was acting "within the scope of his employment" at the time of his automobile collision with the plaintiff. If he is found not to have been acting within the scope of his employment, the United States cannot, as a matter of law, be held liable in this action.

The applicable statute is the Federal Tort Claims Act, Title 28 U.S.C. §§ 1346 (b), and 2671, which provides in pertinent part as follows:

§ *1346(b)*

[T]he district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on or after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

\* \* \* \* \* \*

§ *2671*

* * * Acting within the scope of his office or employment in the case of a member of the military or naval forces of the United States, means acting in the line of duty.

The significant facts in the present case are as follows. On August 11, 1964 defendant Pittman received orders transferring his permanent duty station from Fort Wainwright, Alaska, to Fort Carson, Colorado. His orders provided that he would receive thirteen days traveling time if he used a privately owned vehicle, and an additional thirty days of

Kripke, Hoffman & Friedman, by Daniel S. Hoffman, Denver, Colo., for plaintiffs.

White & Steele, by Lowell White, Denver, Colo., for defendant Alfred Pittman.

Lawrence M. Henry, U. S. Atty., by Robert E. Long, Asst. U. S. Atty., Denver, Colo., for defendant United States of America.

leave or "delay on route" time. He was to report for duty at Fort Carson by November 8, 1964. His orders further provided that he would receive a mileage allowance of 6 cents per mile.

Pittman left Fort Wainwright on September 30, and en route his car became disabled. He had to remain in Torust, Canada, for two weeks while awaiting repairs. When the repairs were completed, he continued on toward Fort Carson via a direct route, and it was on October 24, 1964, near Castle Rock, Colorado, that he was involved in the accident which gave rise to this action.

 There are numerous cases concerned with the specific question posed by this motion: Whether a serviceman who is traveling from one duty station to another is acting within the scope of his employment. It is clear that the question of whether the United States can be held liable as a master under the doctrine of respondeat superior is one to be decided on the basis of the state law. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955). Since the accident in the present case took place in Colorado, the law of this state concerning respondeat superior should govern.

All of the cases have, of course, been decided in the federal courts, and almost every opinion involves a process of distinguishing all of the other cases. For example, a decision finding the United States liable will distinguish cases which denied liability, on the basis that the latter involved servicemen who were on leave at the time of the accident. The rationale is that the serviceman on leave is acting solely in his own personal interest, that his time is his own and that he is not subject to the control of the military. This distinction was made in United States v. Mraz, 255 F.2d 115 (10th Cir. 1958); and in Myers v. United States, 219 F.Supp. 71 (W.D.Mo. 1963). Other courts, however, have held that even if the serviceman is on leave, liability may still be imposed on the government. These courts rely on the "dual purpose" principle of agency law. For example, in United States v. Kennedy, 230 F.2d 674 (9th Cir. 1950), the court said: "We thus have the situation where the soldier employee was both acting pursuant to his employer's direction and personally enjoying his vacation." In such a situation, where the servant has "dual purposes", the master can be held liable for the negligent acts of the servant. This principle was also applied in Cooner v. United States, 276 F.2d 220 (4th Cir. 1960).

Distinctions have also been drawn between cases where the serviceman is receiving or not receiving mileage allowance for his journey; and between cases where the serviceman is making a temporary transfer, as opposed to a transfer to a new permanent duty station. It is said that the serviceman is acting under the control and in behalf of his employer when he is making the temporary transfer, but that the permanent transferee is subject to less control and is acting primarily in his own behalf. See, e. g., Sample v. United States, 178 F.Supp. 259 (D.Minn.1959); and Myers v. United States, supra. This distinction does not appear to be a meaningful one; factually, the degree of control of the military is probably not much different whether the transfer is temporary or permanent.

Neither this Court nor, of course, the Colorado Supreme Court has rendered a decision in point on this question. There are two decisions in the Tenth Circuit, both at the Court of Appeals level. One case imposed liability on the United States, and the other denied liability. In Leonard v. United States, 235 F.2d 330 (10th Cir. 1956), the court applied Wyoming law and found that the conduct of the serviceman, who was not acting under specific military orders, was for non-military, personal purposes, and he was therefore not acting within the scope of his employment.

In the other Tenth Circuit case, United States v. Mraz, 255 F.2d 115 (10th Cir. 1958), the Court looked to the law of New Mexico and found the serviceman to have been within the scope of his employment at the time of the accident. The facts

of that case are similar to those of the case at bar. An officer stationed in California received orders changing his permanent assignment of duty to New Mexico. The order authorized transportation by commercial carrier or by privately owned vehicle—but to arrive by March 5, 1954. If private transportation were used, four days travel time was allowed and mileage reimbursement was authorized. The officer left California on February 27 and had an accident in New Mexico on March 4.

Chief Judge Murrah wrote the opinion, in which he acknowledged the conflicting decisions, which he felt rested upon "controlling state authority, and the predilections of the court." In reconciling the decisions, however, he made this observation:

> There is doubtless a philosophical divergence in the theory that a master is not liable for the wrongful acts of his servant, unless done in respect to the very transaction out of which the injury arose, and the theory that a master is liable for his servant's negligent acts if done while engaged in the master's business and did not arise from some external, independent and personal motive on his part. 255 F.2d at 117.

He went on to characterize the New Mexico law as being in the latter category, holding the master liable where the servant was engaged in the master's business and not acting for purely personal motives. Other decisions, which had denied the liability of the United States, were decided on the basis of the first philosophy, holding the master only where the very transaction inflicting the injury was done for the master. Such cases are United States v. Eleazer, 177 F.2d 914 (4th Cir. 1949); United States v. Sharpe, 189 F.2d 239 (4th Cir. 1951); and Bissell v. McElligott, 248 F.Supp. 219 (W.D.Mo.1965). Judge Murrah's characterization of this "philosophical divergence" in the case law has been seized upon by the Courts of Appeal in other circuits.

In Myers v. United States, 219 F.Supp. 71 (W.D.Mo.1963), the vehicular collision took place in Colorado, and the court looked therefore to the Colorado law of respondeat superior. In that case the defendant serviceman was traveling from a Delaware base to a California base, pursuant to orders. He was proceeding to a temporary duty station and was not on leave. He was also carrying government property in his car and was being compensated for his mileage by the United States.

The Missouri federal district court found that under the Colorado law of respondeat superior the serviceman *was* acting within the scope of his employment at the time of the accident. In summarizing the Colorado law the court said:

> Under the law of Colorado, a master is liable for the acts of a servant, not only when they are directed by the master but also when the scope of his employment or trust is such that the servant has been left the liberty to do, while pursuing or attempting to discharge the employment or trust, the injurious act complained of. 219 F.Supp. at 78, citing Lovejoy v. Denver & R. G. R., 59 Colo. 222, 146 P. 263, L.R.A. 1915E, 888 (1915).

The court also cited Lombardy v. Stees, 132 Colo. 570, 290 P.2d 1110 (1955); and Cooley v. Eskridge, 125 Colo. 102, 241 P.2d 851 (1952).

In a later case, Bissell v. McElligott, 248 F.Supp. 219 (W.D.Mo.1965), the Missouri federal district court noted that in the Myers case the Colorado law was apparently viewed as coming within the more liberal of the two philosophies of respondeat superior enunciated by Judge Murrah in United States v. Mraz, supra. This is the test which allows a finding of vicarious liability whenever the servant is engaged in his master's business and not motivated by a purely personal interest.

Since the Myers decision, the Colorado Supreme Court has rendered a decision which does indeed seem to reflect a

liberal philosophy with respect to respondeat superior. This case is Hynes v. Donaldson, 155 Colo. 456, 395 P.2d 221 (1964). An employee working for a company in Albuquerque was scheduled to make a permanent transfer to the company's Denver office. He made a trip to Denver beforehand in order to discuss the corporation's business in Denver with an official of the corporation. While in Denver he dined with the official one evening and discussed the business, and on his way back to the motel he was involved in an accident. The Court held that he was acting within the scope of his employment while returning to his motel.

The Colorado Court declared in Hynes that: "Acts done which are necessarily incidental to the service for which he is employed are deemed to be 'in the line of his duty, and in the furtherance of the master's business.'" The Court cited Sagers v. Nuckolls, 3 Colo.App. 95, 32 P. 187; Cooley v. Eskridge, supra; and Gibson v. Dupree, 26 Colo.App. 324, 144 P. 1133 (1914).

Apparently the Court did not require a very narrow application of the "control" test, since the corporation obviously had little actual control over how its employee drove his automobile back to his motel. Similarly, there was no required showing that the "very transaction out of which the injury arose" was done for the master's benefit. (The act of returning to one's motel does not seem to meet that test, which is the more restrictive test mentioned by Chief Judge Murrah in Mraz, supra.)

The government argues in the present case that Specialist Pittman was acting outside the scope of his employment because he was "not performing any function normally required by his military service as a member of the infantry; nor in fact performing any military duty whatsoever. * * *" If this argument were carried to its logical extreme, we would be compelled to hold that the United States could be found liable only for injuries incurred while Pittman was engaged in his duties as a construction or demolition specialist. This type of severely limited governmental liability is certainly not what was contemplated by the drafters of the Federal Tort Claims Act. Pittman was traveling to Fort Carson pursuant to the orders of the United States Army, *not* by his own choice or for his own pleasure. By transporting himself to Fort Carson, by direct route, he was engaged in an act which was "necessarily incidental to the services for which he [was] employed." This is the test for imposing vicarious liability in Colorado.

A few courts have said that the government should not be held liable where the serviceman is using his own vehicle. This is not a decisive factor in Colorado, however. "On the question of the master's liability in the circumstances of this case, it makes no difference that the vehicle involved in the collision belonged to the servant." Hynes v. Donaldson, supra, 155 Colo. 456, 460, 395 P.2d at 223.

The facts of the present case seem to fit the Restatement of Agency's definition of "within the scope of employment":

> Restatement, Agency 2d § 228
> (1) Conduct of a servant is within the scope of employment if, but only if:
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master.
> * * *

Only subsection (a) causes any difficulty in this case, and the Colorado Supreme Court apparently does not strictly impose this requirement. See Hynes v. Donaldson, supra. Since Pittman was following a direct route and the collision occurred in Castle Rock, the space requirement of subsection (b) is also met. Acting pursuant to orders and having no dominant personal reason for making the trip, Pittman seems to have been "actuated, at

least in part, by a purpose to serve the master."

■ The Restatement of Agency also requires that the "servant must. be subject to the control or to the right to control of the master." Section 228, comment C. Some of the courts deciding the present question have refused to impose liability on the United States because the "control" test was not met. But as the Court of Appeals of the Fourth Circuit pointed out in Cooner v. United States, 276 F.2d 220 (4th Cir. 1960), the test is one of the *right* to control, not the actual detailed control. "Also, it cannot be doubted that the Army has the right to control the details of the driving, the route to be followed, etc., if it so desires, and the fact that the Army does not exercise its right, does not diminish its power over its own personnel in this respect." Cooner, supra, at 228. See also, O'Brien v. United States, 236 F.Supp. 792 (D.Maine 1964).

Some courts have viewed the fact that the government makes its servants subject to discipline for their reckless driving as an indication of a continuing control. Such discipline is provided for in the Uniform Code of Military Justice, Title 10 U.S.C. § 911.

In Cooner v. United States, supra, the court applied New York law and stated that the test in New York was not one which required the particular activity at the time of the accident to be the servant's normal duty, but rather whether the master's business was being substantially furthered. This also seems to be the test in Colorado. Hynes v. Donaldson, supra.

The following factors substantiated the finding in Cooner that the serviceman was acting within the scope of his employment at the time of the accident:

(1) he was proceeding from Washington to Ottawa upon specific orders by the Army; (2) he was driving on a direct route, making no detour to take care of some personal affair; (3) he was specifically authorized to drive his privately owned automobile; (4) he was reimbursed at a rate of six cents per mile for using his personal car; (5) he was not on leave or pass, but on what the Army terms "travel status"; (6) his trip was expressly deemed, by his travel orders, to be necessary for his military service; (7) in spite of the Government's assertion that it lacked control over the manner in which he drove, and the route to be followed, there was some control in that he was by statute subject to discipline for reckless driving and also, since he was given only a limited amount of time to complete the long journey, the direct route he took was implicitly required.

Probably all of the above factors are present in the instant case, with the possible exception of number 5. It is not clear whether Alfred Pittman was on leave time or travel time when he was involved in the accident.

At the oral argument held on this motion the Assistant United States Attorney was asked how it could be ascertained whether Specialist Pittman was on leave or on travel time at the time of his accident, and, more importantly, whether the distinction is relevant or meaningful. He was unable to give a satisfactory answer to either question. At least one writer has taken the position that the government should not be able to avoid liability simply by labeling a serviceman's time as "leave time". See 45 Minn.L.Rev. 275 (1960). The following observations by the court in O'Brien v. United States, 236 F.Supp. 792, 796 (D. Maine 1964), are particularly apposite:

Whether Kisor was on travel or leave status, the Air Force had to be able to reach him through the address shown in his orders; he might be ordered to temporary duty at any time; and he was required at all times to conform to 'standards of conduct, appearance, and safety expected of members of the Air Force.' He was, moreover, subject to the Uniform Code of Military Justice, 10 U.S.C. § 911, which provides, 'Any person subject to this chapter who operates any vehicle while

drunk, or in a reckless or wanton manner, shall be punished as a court-martial may direct.' In sum, even though the Air Force may have been, as the Government urges, wholly indifferent to the route or mode of travel selected, there can be no question of its power and right to control all of Kisor's actions, including his driving activities, if it so desired.

 Factually it is clear that at the time of the accident defendant Pittman was *traveling* on a direct route to Fort Carson, and that he was engaged in no sort of pleasurable "frolic of his own". The government points to the fact that Specialist Pittman was interested in arriving in Colorado Springs as soon as possible in order to enroll his children in school. This may be true, but the fact remains that he would not have been on his way to Colorado Springs at all were it not pursuant to orders from his employer, the United States Government. Even if we assume, arguendo, that he was also impelled by personal motives, this simply creates a dual purpose situation. By the better reasoned view, where the employee is actuated both by the desire to accomplish a personal purpose and by the desire to serve his master, vicarious liability is properly imposed. See, e. g., Restatement, Agency 2d § 228.

The government argues that because the vehicle was being driven by Pittman's wife approximately 25 per cent of the time he was not acting within the scope of his employment. Yet it is conceded that at the time of the accident Pittman, and not his wife, was driving. Specialist Pittman's orders were not that he drive an automobile, but only that he *transport himself* from one duty station to another, which he could have done by means other than using his privately owned vehicle. It is true, of course, that his wife was not subject to military punishment for her reckless driving, but this fact in no sense diminishes the government's continuing right to control the activities of Specialist Pittman. See O'Brien v. United States, supra.

Applying the Colorado law of respondeat superior as the proper yardstick, it is clear to the Court that at the time of his accident Specialist Pittman was acting in the furtherance of his master's business, in the line of his duty, and, therefore, within the scope of his employment. It is therefore

Ordered that the motion of defendant United States for summary judgment be, and hereby is, denied.