**Dorothea E. McSWAIN and Stella Mc-Sparran, Admx. of the Estate of Tracy L. McSwain, deceased,**

**v.**

**UNITED STATES of America**

**v.**

**Herbert L. McSWAIN.**

**Civ. A. No. 36203.**

United States District Court
E. D. Pennsylvania.

Oct. 28, 1968.

Kanner, Stein, Feinberg & Barol, Philadelphia, Pa., for plaintiffs.

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

TROUTMAN, District Judge.

This is an action for personal injuries arising out of a single car accident which occurred in Colorado. The plaintiffs are the wife and the administratrix of the estate of the daughter of the owner and operator of the automobile, who was then a Corporal in the United States Marine Corps. Both the wife and daughter were passengers in the automobile and all involved in the accident were Pennsylvania domiciliaries at the time of the accident.

On August 29, 1962, Corporal McSwain received orders for a permanent change of duty station from Camp Pendleton, California, to Memphis, Tennessee. He was afforded four days' travel time and twenty days' delay enroute, chargeable to leave, to reach his destination. He was to be reimbursed for mileage to his new duty station at the rate of six cents per mile for himself and six cents per mile for his wife. The accident which gave rise to this lawsuit occurred on September 1, 1962, while Corporal McSwain was proceeding east on Route 40, approximately one mile west of Wild Horse, Colorado.

This action was instituted against the United States pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq., which subjects the United States to liability for personal injuries caused by the negligence or wrongful act or omission of any employee of the government while acting within the scope of his office or employment.[1] The government then joined Corporal McSwain, the owner and operator of the automobile, as a third-party defendant in the action.

Presently before the Court for disposition are the motions of the United States to dismiss this action, contending that as to the wife's claim this action is barred by the interspousal immunity doctrine which precludes the maintenance of personal injury actions between spouses, and for summary judgment, contending

---

1. 28 U.S.C. § 2671 provides, inter alia:

"'Employee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.

"'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty. June 25, 1948, c. 646, 62 Stat. 982; May 24, 1949, c. 139, § 124, 63 Stat. 106".

It has been held that the phrase "line of duty", as applied to military personnel is the equivalent of "scope of employment", and is no broader. United States v. Campbell, 172 F.2d 500 (5th Cir. 1949); King v. United States, 178 F.2d 320 (5th Cir. 1949).

that Corporal McSwain was not acting within the scope of his office or employment at the time of the accident.

■■■■ In actions under the Federal Tort Claims Act the liability of the government is controlled by the law of the place where the act or omission occurred. As the accident occurred in Colorado, the substantive law of respondeat superior of Colorado controls in determining whether Corporal McSwain was acting within the scope of his employment. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); Solow v. United States, 282 F.Supp. 900 (E.D.Pa. 1968). So also it would appear that the law of Colorado concerning intramarital tort actions controls whether this action is precluded by the interspousal immunity doctrine.[2]

■■ Applying the law of Colorado, Mrs. McSwain has the legal capacity to institute this action since the law of Colorado does not preclude the maintenance of intramarital tort actions. Colo.Rev. Stat.Ann. § 41–1–2. However, the government contends that the status of the parties involved in the accident as domiciliaries of Pennsylvania requires that this issue be determined by reference to the law of the Commonwealth of Pennsylvania.[3] Even assuming this argument is correct—and we do not decide that it is—

the law of Pennsylvania would not preclude the maintenance of this action.

■■ In Pennsylvania intramarital tort actions are precluded by statute. 48 P.S. § 111. However, in Koontz v. Messer, 320 Pa. 487, 181 A. 792 (1936), a wife instituted a trespass action against the employers of her husband for injuries alleged to have been sustained by her through the negligence of her husband while in the course of his employment. On the theory that the husband-employee was liable over to his employers, the husband was joined by the employers as an additional defendant. The jury returned a verdict in favor of the wife against the employers and in favor of the employers against the husband-employee. On appeal, the Supreme Court held that the wife, on the theory of respondeat superior, could sue the employers of her husband even though she could not sue her husband and that the personal immunity of the husband from suit by his wife did not prevent him, as an additional defendant, from being liable to answer, by way of contribution, to the third parties sued by the wife. Koontz is almost identical to the present action and consequently, even assuming Pennsylvania law controls the disposition of this issue, the maintenance of this action is not precluded by the interspousal immunity doctrine.[4]

---

2. Whether spouses may institute tort actions inter se goes to the question of their capacity to sue. Although the question arose in contexts different from that now before this Court, it has been held that the capacity of parties to sue under the Federal Tort Claims Act is governed by the law of the state where the accident occurred. Olson v. United States, 175 F. 2d 510, 512 (8th Cir. 1949); Bucheit v. United Air Lines, Inc., 202 F.Supp. 811, 814 (S.D.N.Y.1962); Kunkel v. United States, 140 F.Supp. 591, 593 (S.D.Cal. 1956).

3. In support of that proposition the government cites Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964), which rejected the rule of lex loci delicti and looked beyond the situs of the accident to apply the Pennsylvania rule as to the amount of damages recoverable in survival

actions since Pennsylvania had the most significant contact with the plaintiff in that action on that issue. However, in the Griffith case the Court was not confronted with the Federal Tort Claims Act and case law construing that Act to the effect that the capacity of the parties to maintain the action is governed by the lex loci delicti.

4. The Government contends that if the law of the state to which we refer precludes the maintenance of intramarital tort actions, that defense is available to the Government automatically notwithstanding the fact that the law of the state to which we refer would not make that defense available to private employers under similar circumstances. However, 28 U.S.C. § 1346(b) imposes liability upon the United States " * * * under circumstances where the United States, if a

■ Before applying the law of Colorado to the issue of whether Corporal McSwain was acting within the scope of his employment, it might be well to point out that all suits under the Federal Tort Claims Act must be filed in the Federal courts. The result is that, while State law is to be applied, there can never be state cases exactly in point as to the factual situations involved. Thus, while the Federal courts have attempted to find light in decisions of the State courts where the accidents happened, they have also felt it necessary to look to general agency principles. It must be acknowledged, however, that the pattern those cases reveal is somewhat confused.

This confusion has been attributed to the differences in " * * * controlling state authority, and the predilections of the court". United States v. Mraz, 255 F.2d 115, 117 (10th Cir. 1958). In an attempt to reconcile the decisions, the Tenth Circuit in *Mraz*, supra, at page 117, noted:

" * * * There is doubtless a philosophical divergence in the theory that a master is not liable for the wrongful acts of his servant, unless done in respect to the very transaction out of which the injury arose, and the theory that a master is liable for his servant's negligent acts if done while engaged in the master's business and did not arise from some external, independent and personal motive on his part. * * * "

In Courtright v. Pittman, 264 F.Supp. 114 (D.C.Colo.1967), the Court there held that applying Colorado law, the test of whether a serviceman is acting within the scope of his employment is not one which requires the particular activity at the time of the accident to be the servant's normal duty, but rather whether the master's business was being substantially furthered, thereby concluding that Colorado adopts the more liberal of the two philosophies of respondeat superior enunciated by the Tenth Circuit in United States v. Mraz, supra.[5]

■ *Courtright*, supra, is so similar to the present action it might be well to discuss it in detail. In that case, suit was instituted against the United States under the Federal Tort Claims Act for damages sustained by plaintiffs in an automobile accident with a serviceman. The accident having occurred in Colorado, the Court applied the Colorado law of respondeat superior. The following factors substantiated the finding by the Court that the serviceman was acting within the scope of his employment at the time of the accident: He received orders transferring his permanent duty station from Fort Wainwright, Alaska, to Fort Carson, Colorado. He received thirteen days' travel time and thirty days' delay enroute, chargeable to leave,[6] to reach his destination. He used his own automobile and was accompanied on the trip by his wife and children. He was compensated for mileage at the rate

private person, would be liable to the claimant * * *". See also 28 U.S.C. § 2674. Certainly those provisions are not intended to incorporate all the defenses available to the employee even though not available to a private employer; rather, it is intended to treat the United States as a private employer and if a particular defense is not available to a private employer, it is not available to the United States.

5. See also Myers v. United States, 219 F.Supp. 71 (W.D.Mo.1963), aff'd. 331 F.2d 591 (8th Cir. 1964) and Bissell v. McElligott, 248 F.Supp. 219, 222 (W.D. Mo.1965), both of which discussed Colorado law on this point.

6. The government contends that since Corporal McSwain was on leave he could not possibly have been acting within the scope of his employment. But there are numerous cases which hold that the fact that a serviceman is on leave is merely a factor to be considered along with all other factors. It is not, as the government suggests, in and of itself dispositive of the issue. In any event, to dispose of this matter on this basis would be extremely difficult, if not impossible, for it would be necessary to ascertain whether, at the time of this accident, Corporal McSwain was on leave or travel time.

of six cents per mile. He was traveling on a direct route to Fort Carson at the time of the accident, although he intended to stop in Colorado Springs to take care of personal business before proceeding to Fort Carson.

All of the above factors are present in this case, with the possible exception that at the time of the accident Corporal McSwain was not traveling on a direct route to his assigned duty station in Memphis, Tennessee. The deposition testimony of Dorothea McSwain, plaintiff herein, indicates that at the time of the accident Corporal McSwain was intending to first go to Philadelphia, Pennsylvania, to visit her relatives and then proceed to Memphis, Tennessee. Memphis is due east of Camp Pendleton and southwest of Philadelphia. Wild Horse, Colorado, which is approximately where the accident occurred, is northeast of Camp Pendleton, due west of Philadelphia and about one-half the distance between Camp Pendleton and Memphis. The Government argues in its brief and on oral argument that since at the time of the accident Corporal McSwain was intending to go to Philadelphia and was using a route normally taken to Philadelphia and not to Memphis, he was not acting within the scope of his employment.

■ But Corporal McSwain was traveling east in the direction of Memphis at the time of the accident, even though he was not traveling on the most direct route from Camp Pendleton to Memphis and even though he intended to first go to Philadelphia. Moreover, Corporal McSwain would not have been on his way east at all were it not pursuant to orders from his employer, the United States Government. Being impelled to travel east by personal motives and pursuant to orders simply creates a dual purpose situation. In such a situation, which again is strikingly similar to the situation in *Courtright*, supra, where the serviceman was intending at the time of the accident to attend to personal matters before proceeding to his assigned duty station, Colorado would, in our opinion, conclude that Corporal McSwain was acting within the scope of his employment.

■ Admittedly, the fact that Corporal McSwain was not using a direct route to Memphis from Camp Pendleton at the time of this accident affords a basis upon which this case may be distinguished from *Courtright*, supra. But the fact remains that he was traveling east in the direction of Memphis to effectuate a permanent change of duty station; he was doing so pursuant to orders; and he would not have been doing so were it not for those orders. Certainly, the interests of the United States Government in effectuating a permanent change of duty station were being substantially furthered at the time of this accident. Under the circumstances, although there is a distinction between this case and *Courtright*, supra, the distinction is not of sufficient substance to justify our reaching a contrary conclusion. The desirability or wisdom of the result is a matter for Colorado. Our conclusion here merely recognizes and gives effect to it.

Accordingly, the motions of the United States to dismiss this action and for summary judgment will be denied.