## No. 17,739.

ANDY LOMBARDY *v.* JOHN W. STEES, ET AL.
(290 P. [2d] 1110)

Decided December 5, 1955.   Rehearing denied January 3, 1956.

Mr. C. R. Monson, Mr. Robert H. Gleason, for plaintiff in error.

Mr. Nicholas Magill, for defendant in error John W. Stees.

*En Banc.*

Mr. Justice Holland delivered the opinion of the Court.

There is no substantial conflict in the testimony in this case, and the facts are summarized as follows:

May 10, 1953, plaintiff in error, defendant in the trial court, was the owner of the Pioneer Hotel and bar at Steamboat Springs, Colorado, and Floyd Brasier was in his employ as bartender. Defendant in error Stees, plaintiff in the trial court, was a patron of the bar on the night in question. It is alleged in the complaint that Brasier, the bartender, at the time mentioned, and while performing his duties as bartender and in ejecting plaintiff from the premises, did unlawfully assault plaintiff causing serious personal injury, and by amendment to the complaint, prayed for damages in the sum of $30,000. The defendants named were Lombardy and Brasier. Lombardy filed answer to the complaint denying that the assault was in performance of Brasier's duty as bartender and, for lack of information, denied the damages as alleged. Thus formed, the issues were tried to a jury in November of 1954, which failed to reach a verdict. Another trial during the April term, 1955, resulted in a verdict against Lombardy, plaintiff in error, in the sum of

$20,000. No service was had upon Brasier and no appearance was made for him in the trial or in this court.

Lombardy prosecutes this writ of error on the ground that plaintiff did not sustain the burden of proof that the assault complained of was committed within the scope of Brasier's employment, and in fact, introduced no evidence thereon; that the instructions to the jury were erroneous in that emphasis was directed to certain aspects of the evidence and they did not set forth the applicable law.

At this trial the testimony taken in the former trial was, by stipulation, used in the second trial. The substance of the testimony discloses the following facts: Brasier was employed by plaintiff, was a bartender, and was working in that capacity on the date involved. Brasier came on duty at 2:00 p. m. at which time Lombardy's shift ended, and continued on duty until 10:00 p.m., when Lombardy took over and operated until midnight. On the night in question, Lombardy was not on the premises at the time of the assault. The only express instruction to Brasier was that if anyone got too much to drink he was not to be served further. There was a stick, apparently the handle of a golf club, in the bar and it is not shown by the evidence that it was used for any purpose in the operation of the bar as such. Plaintiff Stees on the night in question came into the bar and drank two or three glasses of beer and states that he gave the bartender a ten dollar bill, but received change for only five dollars, at which time there was some discussion and Brasier told Stees that in the event the cash register was "long" on cash in the morning, he would refund the other five dollars to Stees. There seemed to be no particular feeling at the time of this discussion; however, subsequent thereto Brasier asked Stees to leave the bar, believing that he had had enough to drink. Without protest Stees started to leave and was part way to the door when Brasier came around the corner of the bar with the stick, hitting him on the head, knocking

him to the floor and causing the injury of which complaint is made. This was close to the exit door. There was no dispute concerning the injuries received by Stees or the damages suffered therefrom. The only testimony in dispute is, that Brasier said that when Stees was leaving the bar he called Brasier a bad name, and that in hitting Stees it was not his purpose to maintain order in the bar, because Stees had never been troublesome and was not drunk at the time. Brasier further stated that when he was called the bad name, he thought that Stees was looking for trouble, not with the patrons in the bar, but with him personally, and stated that the reason he hit Stees was, "It was a personal reason, Sir." He further testified and answered the following interrogatories:

"Q. Did you have in mind any view of keeping order?

"A. No, Sir.

"Q. It was merely because he called you a dirty name, is that correct?

"A. That is exactly right."

A disinterested witness, Renfroe, testified that he saw Stees and Brasier engaged in conversation but heard none of the words, then he heard Brasier say: "Would you please pass out." And again, "Will you please pass out." And that after Stees started to pass out, he heard Brasier say "Don't call me a s.o.b.," at which Brasier came out from behind the bar.

Stees testified that he arrived at the bar a little before 7:30 on the evening in question and bought some beer and gave a ten dollar bill and received change for five dollars and told the bartender that he had not received the proper change and was told that if the cash register indicated that it was "long" the difference would be returned to him the next day. He then asked for more beer and the bartender refused to serve him. He turned and walked toward the door and the next thing he recalled he was lying on the floor with someone standing over him. He denied that he called Brasier the name

herein referred to. Another witness, Collins, testified that he saw Brasier strike Stees with the stick when Stees was about two steps from the door; that he heard no name calling and that there had been no argument between the two. Lombardy, defendant, testified that he had instructed Brasier that if anyone got too much to drink not to serve them any further; and that immediately after the incident here involved, Brasier left his employ. After testimony concerning the nature of the injury and the damages, all parties rested. Counsel for defendant Lombardy moved for a directed verdict on the ground that plaintiff had not sustained the burden of proof that the act complained of was performed within the scope of the employment, nor within the express or implied authority of the bartender; and finally that the act was committed in pursuance of a personal controversy between the bartender and Stees; and was in no manner connected with the performance of the bartender's duty, express or implied, or in the furtherance of his employer's business activities. Counsel for plaintiff moved for a directed verdict on the ground that by the admissions of defendant, his liability was established in that the bartender was to control and manage the activities on the premises and keep down trouble. Both motions were overruled with the proviso that both would be re-examined after the rendition of the verdict. The court then instructed the jury, giving in particular instruction No. 5 over the objection of defendant. Due to the length of said instruction, it being three pages, it will not be set out herein, and will receive no further discussion other than to say that that part of the instruction in which the jury was told to consider the nature and character of defendant's business, was erroneous. The second paragraph of instruction No. 6, given over the objection of counsel for defendant is as follows:

"You are instructed that if the servant steps aside from his employment to do some wrongful act, not a part of or related to the master's business, and to which the

servant is inspired by personal and private reasons, or to accomplish some purpose entirely his own, the servant will then be acting beyond the scope of his employment and the master will not be liable.

"The fact, however, if it be a fact, that at the time of and in the perpetration of the wrongful act complained of, the servant was combining some private purpose of his own with the business of his master is not of itself sufficient to take the wrongful act outside of the scope of the authority and employment, and the master will not on that account be relieved from liability."

These matters, to which objection was timely made, were again presented to the court in a motion for judgment nothwithstanding the verdict, and in the motion for a new trial.

The record is barren of any testimony to the effect that the assault complained of was expressly or impliedly authorized. The only express authority given Brasier was to serve drinks and to refuse to serve any patron who had had too much. The question decisive of this case is whether or not the blow which caused the injury and damage was struck in maintaining order in the premises. When the bartender refused to serve plaintiff any further drinks, plaintiff immediately turned away and started to leave the premises. There was no order to be maintained, because there was no disturbance of any kind. It is clear from the testimony of the bartender that the blow was motivated by a personal insult by plaintiff, who called him a bad name. As was well stated by this court in the case of *Novelty Theater Co. v. Whitcomb,* 47 Colo. 111, 106 Pac. 1012, "To bind the company for damages resulting from such conduct and actions on the part of its employees, they must have been expressly or impliedly authorized and if by implication, then in such a manner as to leave the matter free of doubt."

The incident here arose out of a personal and private matter between plaintiff and the bartender and

in the bartender's resentment thereof; there was no connection whatever with the keeping of order in the barroom, or in furthering the owner's business. We believe it to be clear from the evidence that the act of the bartender here was not within the scope of his designated employment. All authorities are in accord to the effect that the owner is not responsible if the wrong done by a servant was without his authority and not for the purpose of executing his orders or furthering his interests. The rule applicable was well stated by Mr. Justice Alter in the case of *Cooley v. Eskridge,* 125 Colo. 102, 241 P. (2d) 851 as follows:

"We recognize as a general rule of law that a master is liable in an action by a third party for any damages resulting from any act of his servant during the employment if the act is within the scope of the servant's employment. The phrase 'scope of employment' used in connection with the master's liability for the acts of a servant is to be determined by what the servant is doing for the master and what he actually does with the knowledge and approval of the master. * * * It should be recognized that there is a marked distinction between an act done by a servant 'during his employment' and an act done within the 'scope of his employment.' "

It is thus to be seen that there is a clear distinction, as there should be, between acts done by an employee during his employment and acts done within the "scope of employment." The effect of the testimony here is that in doing the act complained of, the servant became the same as a stranger to the master.

We believe sufficient has been said in the foregoing discussion to require that the judgment against Lombardy should be reversed, this without discussion of other errors assigned with respect to the instructions, other than to say that instruction No. 6 as hereinbefore set out was erroneous in its entirety; the second paragraph thereof being unsupported by any evidence in the case.

For the reasons indicated the judgment is reversed and the cause remanded with directions to the trial court to dismiss the complaint.

MR. JUSTICE LINDSLEY not participating.