**352**

Fred MADDEX, Plaintiff,

v.

Frank RICCA dba Gateway Buffet, and
Harold Atlee, Defendants.

Civ. No. 900.

United States District Court
D. Arizona,
Prescott Division.

Sept. 12, 1966.

Alan Philip Bayham, Dykes, Selden &
Bayham, Phoenix, Ariz., Edward H.
Spraker, Fresno, Cal., for plaintiff.

Rex H. Moore, Jennings, Strouss, Sal-
mon & Trask, Phoenix, Ariz., for defend-
ant, Frank Ricca.

Keith F. Quail, Favour & Quail, Pres-
cott, Ariz., for defendant, Harold Atlee.

## MEMORANDUM OPINION

McNICHOLS, District Judge.

This is a personal injury controversy.
By appropriate pre-trial order, the ques-
tions of liability and damages have been
severed and only the issue of liability is
here presented. No timely request hav-
ing been made for a jury, the matter was
tried to the Court. Evidence on the sole
issue of liability was taken and the cause
submitted after the filing of briefs.

The following factual background
brought on the plaintiff's complaint:
Defendant Ricca owned and operated the
Gateway Buffet at Kingman, Arizona.
The Buffet is a bar and tavern, licensed
by the State of Arizona for the sale of
alcoholic liquor for consumption on the

premises. Defendant Atlee was an employee of Ricca, working as a bartender. At approximately 11:00 P.M. on the evening of January 12, 1964, plaintiff, Maddex, a construction worker, entered the place of business and ordered a drink from Ricca who was tending bar. Atlee was absent from the premises at the time. Ricca advised Maddex that he could not serve him because of his state of intoxication and asked that Maddex leave the premises. Maddex refused to leave voluntarily and the police were summoned. Two officers came to the bar and escorted Maddex outside to his automobile which was parked, immediately in front of the bar entrance, in the parking space reserved for patrons of the business. Several friends of Maddex were present in the bar, engaged in a game of billiards or pool. These persons advised Maddex, at the time of his expulsion from the bar, that they would join him outside shortly and accompany him to a restaurant for the purpose of procuring food and coffee. Plaintiff entered his car, started the same and fell asleep slumped over the steering wheel with the motor running. It was wintertime and quite cold. Maddex had apparently removed the engine fan from his car which caused the motor to heat and the radiator to boil. In the meantime defendant Atlee returned from his supper break, entered the saloon and began to visit with patrons at a table near the door. Someone observed steam and smoke emanating from plaintiff's car, and thinking the car was on fire shouted a warning in the bar. Atlee ran out to the car, reached in and turned off the ignition switch and removed the key. Defendant Ricca went to the entrance of the tavern and observed that the front of the building was enveloped in steam or smoke. However, it was soon evident that there was no fire and only a steaming radiator. Ricca saw that Atlee seemed to be taking care of the trouble and Ricca returned to his station behind the bar. Plaintiff's pool-playing friends were also near the steaming car and Atlee gave the car key to one of these persons. Some activity by plaintiff's friends caused the engine hood of the car to be raised and again Atlee interjected himself into the affair by reaching into the car to adjust an inside engine hood control. On each of the two occasions when Atlee approached the car, plaintiff advised him that he didn't want him around plaintiff's car.

At this time there was an exchange of profanity between Atlee and Maddex and ultimately Maddex opened the car door and stood by his car, leaning on the door. More words appear to have been exchanged and Maddex was seen to fall to the ground. While Maddex was lying on the ground, Atlee kicked him several times, causing rather extensive injuries.

The foregoing facts are not seriously in dispute.

The Court finds the following additional facts to have been proved or not proved:

1. That Atlee was an employee of, and not a partner of, Ricca.

2. That Atlee had returned to his work and was involved in the usual course of his duties as an employee of Ricca when the warning of potential fire was sounded.

3. That the injuries to plaintiff occurred in the parking area maintained by Ricca as a part of his business establishment.

4. That there appeared to be a danger to the patrons and to the physical plant of defendant Ricca's bar.

5. That in the course of his employer's business, Atlee went to investigate the fire, shut off the engine and took the engine key.

6. That on two occasions plaintiff asked Atlee to leave him alone and to go away from the vicinity of plaintiff's car.

7. That the apparent danger had ended and that plaintiff's friends were taking care of the plaintiff and the problem with the car.

8. That Atlee continued to remain near the plaintiff's car after the need

for his continued presence there had passed.

9. That the plaintiff called Atlee foul and insulting names, such as "son of a bitch". That Atlee used the same type of language toward plaintiff.

10. That there was a pre-existing feeling of animosity between Atlee and the plaintiff. That on at least one prior occasion, some two weeks before January 12, 1964, Maddex and Atlee had gotten into a quarrel in another bar in Kingman, Arizona and Atlee had attempted to get Maddex to go outside of the place to fight.

11. That the plaintiff may have struck the defendant Atlee with the door of plaintiff's car while getting out of the car after asking Atlee to leave. That if the door did strike Atlee, it was not such a striking as caused any serious injury. At any rate at the time the car door was opened by the plaintiff, the need for Atlee's presence in the parking lot had ceased.

12. That Atlee was the aggressor and struck the plaintiff either with his hand or foot causing the plaintiff to fall to the ground breaking his leg. That after Maddex was on the ground with a broken leg and in a defenseless position, Atlee needlessly and wrongfully kicked the plaintiff on each leg, in the back, on the arm or wrist, and in the face. That such kicks were viciously delivered and calculated to inflict serious, painful and incapacitating injuries. That plaintiff was seriously injured by such kicks so delivered after plaintiff had become defenseless.

13. That Atlee administered the kicking injuries at a time when there was no reasonable ground for him to need to maintain order, or to protect or defend himself and that the same were intended to punish and injure the plaintiff.

14. That the altercation between Atlee and plaintiff was brought about by a combination of pre-existing animosity, an exchange of profane names, plaintiff's drunken condition and the failure of Atlee to leave the scene when his presence there was no longer required.

15. That it is not proved that defendant Ricca knew or had reason to believe that the defendant Atlee was a person of violent tendencies at any time prior to the altercation involved.

16. That it is not proved that Atlee had a reputation in the community for quarreling or fighting.

17. That there is no proof that defendant Ricca actually or impliedly ratified the action of Atlee in attacking the plaintiff.

■ From the foregoing facts found, I have no hesitation in concluding that, as to the defendant Atlee, liability is amply shown. I conclude that the continued attack by Atlee on the person of the plaintiff, after the plaintiff was on the ground, was wrongful, tortious and unexcused by any legal excuse. Defendant Atlee must be held to respond in damages for such compensable injuries as the plaintiff may later prove reasonably to have resulted from the wrongful conduct of the said defendant.

The liability issue as applied to the case of the defendant, Ricca, is much more difficult.

■ By the great weight of authority in our American jurisdictions, and under the doctrine of respondeat superior, an employer may be liable for an assault committed by his employee while acting within the scope of the employment even though the employee's action is wanton and vicious and even though such conduct is contrary to the employer's specific instructions. (See excellent annotation: 34 A.L.R.2d 367 at page 396, where an exhaustive list of cases is set forth.).

The reported Arizona precedents in this area are meager to say the least. However, no case has been cited to the Court, nor have I found one, from Arizona which conflicts with the above stated general rule. Indeed, the defendant, Ricca, does not specifically deny the bind-

ing force of the law of potential liability by way of the doctrine of respondeat superior.

Defendant Ricca's theory of defense is twofold: first, that Atlee was not acting within the scope of his employment when he initially approached the automobile of the plaintiff. This again on the double ground that Atlee had not returned to work and alternatively that it was not part of his duty to superintend the trouble in the parking lot. Unfortunately for this defendant, the Court has found facts on which it must be concluded that Atlee was acting within the scope of his employment in investigating and originally dealing with the potential hazard of fire in the car parked in the adjacent lot.

But this is not dispositive of the case, as Ricca advances a second defensive theory, to-wit: that Atlee had deviated from his employment or alternatively that his conduct was completely beyond the scope of his employment and was an entirely personal matter.

On this latter phase of the law, the Arizona precedents are somewhat helpful. There are reported cases involving extracurricular use of motor vehicles by employees directed to perform certain services. The Arizona court has, in such instances, consistently found the employer to be free from liability where the employee used the vehicle for some purpose personal to the employee and while so doing injured a third party.[1]

There are, however, a multitude of cases from other jurisdictions bearing on this specific problem. The best compilation I have found is contained in the previously noted volume of American Law Reports (34 A.L.R.2d 367). Some general summations quoted from the text of this annotation may serve to put the issue we are dealing with in perspective:

> "In operating places of public accommodation such as hotels, drinking establishments, and restaurants, it would appear that the proprietor, for the proper operation of his business (and possibly because of a duty imposed by law to protect such patrons), is bound to see that peace and good order prevail upon his premises. Aside from the possible legal duty of protection which he owes his patrons it is apparent that the proprietor, if he is to properly run his business and thus attract desirable patrons, must see that his premises are peaceful and not given to disturbances of the peace. For this purpose, his agents, such as bartenders, cashiers and managers of restaurants, managers and clerks of hotels and inns, and other similar employees, are expected as part of their duties to maintain order about the premises. Assaults by such employees, fairly found to have been committed for the purpose of maintaining order, although unjustified, are generally held to have been committed by such employees in the course and scope of their employment, since the amount of force required to quell disturbances or eject unruly patrons is one of discretion, and there is no excuse if excessive force has been used by such servants, even though, as it sometimes appears, the servant has in part been motivated by personal resentment or malice." [2]

> "The logical sequence of time which has been considered by some courts upon the question whether an assault was committed by a servant while acting within the scope of his employment has for its purpose a determination of whether the business dealings of the master have been completed. The argument made is that if the master's business has been terminated, an assault made at such time is ipso facto one made as the result of some matter disconnected with the master's business, and thus cannot be said to be in pursuance of the master's interests or in the course or scope of employment.

---

1. Peters v. Pima Mercantile Co., Inc., 42 Ariz. 454, 27 P.2d 143; McCauley v. Steward, 63 Ariz. 524, 164 P.2d 465; Johnston v. Hare, 30 Ariz. 253, 246 P.

546; Otero v. Soto, 34 Ariz. 87, 267 P. 947; Schneider v. McAleer, 39 Ariz. 190, 4 P.2d 903.

2. page 414, supra.

While the inquiry is generally one of fact, it may be stated generally that the following courts expressly or by implication support the proposition that where it has been shown that the assault is not so closely connected in point of time with the transaction of the master's business as to constitute a part thereof, or, as has been sometimes stated, does not constitute a part of the res gestae with respect thereto, it will be held to have been personal to the servant and not committed within the scope or course of the employment." (Citing many cases) [3]

"In determining whether a servant committing a personal assault upon a patron, customer, or other invitee was acting within the scope of his employment, motivation may be a factor to be considered by the court on the question of the liability of the employer. However, motivation alone is seldom decisive, since a servant may purposely assault a customer who is acting contrary to the best interests of his master, with some view of protecting those interests, but also with the intention of gratifying his own private feelings or desires toward such person. * * *

"Thus, it may be stated broadly that where the assault by an employee is purely personal, having no real connection with the master's business, the doctrine of respondeat superior is inapplicable and can form no basis upon which the liability of the employer may be predicated." (Citing many cases from many jurisdictions) [4]

"A factor which has been noted by some courts in connection with the question whether the assault was purely personal to the servant or within the scope of the employment is evidence of past disagreements or animosities. Without attempting to evaluate the exact importance of such factor in the final determination, we may say that such factor offers some basis for the decision that the assault was purely personal, for it would afford evidence of motivation of a personal nature." [5]

In Lombardy v. Stees, 1956, 132 Colo. 570, 290 P.2d 1110, the plaintiff entered defendant's bar and during the course of the evening a dispute arose over whether or not plaintiff had received the correct change from a ten dollar bill. Later the plaintiff became intoxicated and was asked by the employee bartender to leave. Plaintiff called the bartender a dirty name and turned and started out of the building. As the plaintiff was part way to the door, the bartender went around the end of the bar, caught up with the plaintiff, and hit him on the head with a club causing serious injuries. Plaintiff sued the employer. In dismissing the complaint against the employer, the Colorado court said:

"The record is barren of any testimony to the effect that the assault complained of was expressly or impliedly authorized. The only express authority given Brasier (the bartender) was to serve drinks and to refuse to serve any patron who had had too much. The question decisive of this case is whether or not the blow which caused the injury and damage was struck in maintaining order in the premises. When the bartender refused to serve plaintiff any further drinks, plaintiff immediately turned away and started to leave the premises. There was no order to be maintained, because there was no disturbance of any kind. It is clear from the testimony of the bartender that the blow was motivated by a personal insult by plaintiff, who called him a bad name. * * *

"The incident here arose out of a personal and private matter between plaintiff and the bartender and in the bartender's resentment thereof; there was no connection whatever with the keeping of order in the barroom, or in furthering the owner's business."

3. page 436, supra.

4. page 402, supra.

5. page 408, supra.

But we should compare the case of Novick v. Gouldsberry, C.A.9 (1949), 173 F.2d 496, 12 Alaska 267, where the plaintiff, in a bar, allegedly insulted the wife of the employee bartender. The bartender took umbrage, immediately struck the plaintiff with a bottle and proceeded to administer a severe beating to the plaintiff who thereafter sued the employer. In Novick, the learned District Judge, writing for the court, said:

"But in the case before us, we are dealing with a bartender, who, by the very nature of his employment, is in charge of the employer's premises and is charged with keeping order about them. An employment of this character is—in the language of the Restatement—'one which is likely to bring the servant into conflict with others.' Restatement, 1 Agency, Sec. 245, Comment (a), p. 548. Usually, a bartender is the sole employee on duty at a particular time. If, in exercising his control over the premises, he commits an assault upon another, the employer will be held liable. (Citing authorities) The reason for the rule is well stated in Johnson v. Monson, 1920, 183 Cal. 149, 150, 190 P. 635:

" 'The question is not one of authority as between the principal and the agent. As between them, it may well be that the agent's tort against a third person is without authority or is directly contrary to express orders. But the principal is nevertheless liable for the tort of the agent, provided it be committed by him within the scope of his employment. That the assault in this case was committed within the scope of the bartender's employment is plain. To be sure there is nothing to show that he was authorized or employed to commit assaults, but it is found that he was authorized to maintain order in the saloon, and the assault was committed in the course of his keeping order. * * * The situation is not changed by the fact that the court finds the assault to have been malicious and willful.' "

In Novick the employer was held responsible.

While Lombardy and Novick may seem, on a cursory inspection, to be poles apart, the holdings are theoretically compatible. Additionally, these cases serve to highlight the problem involved. In Lombardy the plaintiff was leaving the premises willingly and was assaulted; while in Novick, the plaintiff was still engaged in the offensive conduct, or at least had not discontinued the same. In Lombardy the need to maintain order was held to have ceased, and in Novick to be continuing. In the first instance then the assault was not within the scope of employment, and in the second it was held to be.

The strong language of Novick has, in this writer's opinion, been considerably diluted, or at least explained, by the holding in S. Birch & Sons v. Martin, C.A.9 (1957), 244 F.2d 556, 17 Alaska 230. In the Birch case, a group of contractors' employees, just after the close of the day's work, assaulted the plaintiffs who were driving lawfully in the construction area. In deciding that the employer was not responsible, the Ninth Circuit Appellate Court, without overruling Novick, distinguished the facts and used this clarifying language:

"The fact that the unlawful activity was intentional and even criminal does not per se take it out of the scope of employment. 'It is accepted law that the master may be liable for the willful and malicious acts of a servant (quoting Novick).' But such fact is an important consideration in ascertaining if the specific acts charged occurred while the servant was acting within the scope of his employment. Its precise effect in a given case will vary with the particular factual context involved.

"Here the acts complained of constituted battery. 'To create liability for a battery by a servant upon a third person, the employment must be one which is likely to bring the servant into conflict with others.' Restatement of Agency, § 245, Comment a. What is needed is a functional relationship be-

tween the employment and the wrongful act or acts. It must be shown that 'the particular tortious act was [not] clearly unrelated to the accomplishment of any of the objects of the employment.' (Again quoting from Novick) Where the connection is too remote and attenuated, the master is not liable. Under such conditions the only reasonable inference to be drawn from the servant's conduct is that he is giving vent to personal feelings and is seeking solely to further his personal interest. 'When this is the case, the mere fact that the act which caused the harm was done while the servant was acting in the employment and on the employer's premises would not result in liability. 35 Amer.Jur., Master and Servant, Sec. 55; Restatement, 1 Agency, Sec. 245, Comment .(d), p. 550.' (Again quoting Novick) It must appear that the employee is acting in part at least in the interests of his employer; mixed motives will suffice. But where the employee acts only to further his own interests, the employer is not liable. (Citing cases) The question is essentially one of degree."

The court then said at page 560: "Each case must be decided in its own unique factual setting."

■■ As I view the state of the law, and as I believe the Arizona court would hold, the employer is liable to a patron assaulted by an employee in a bar so long as the events bringing about the assault are within the scope of the employee's employment. If the employee's duty (as is that of the usual bartender) is to maintain order and protect the owner's property, and he be over-zealous in carrying out this duty, even though impelled by some personal malice, the attack will be held to be within the scope of the employment and employer's liability remains. If the requirement of maintaining order and/or protecting property has ceased, or hadn't existed in the first place, and for purely personal reasons the employee proceeds to assault a patron, then such assault may be beyond the scope of the employment and the employer's liability will have terminated, depending on the facts of the case.

In the instant cause, the peculiar factual situation must be scrutinized to determine whether or not the wrongful assault, shown by the evidence to have occurred, was committed by the defendant employee within the scope of his employment.

I have found that the employee in this action was within the scope of his employment at the time he proceeded to the parking lot and removed the keys from the steaming car. His employer's patrons and building were in jeopardy. The employer appeared to expect him to take some action. But, when the engine was shut off, the apparent danger was found to be non-existent. Plaintiff's friends took over. No problem of maintaining order or protecting property continued. The employee had no further need to remain in the parking area and indeed was asked by plaintiff to move away from plaintiff's car. No further business of the employer called for the continued presence of Atlee or required his attention. His regular post of duty was inside the bar.

Atlee, however, chose to remain at the side of the plaintiff's car and to exchange foul names. He was asked a second time to remove himself. He had previously sought a fight with plaintiff and obviously wanted such a contest. When the plaintiff emerged from his car he was not menacing, he was drunk, he leaned on his car surrounded by his friends who were willing to take care of him. Atlee saw his chance and knocked the plaintiff down. Plaintiff's leg was broken in the fall and he was helpless. Atlee then administered the brutal beating found by the Court to have been suffered by the drunken and injured plaintiff.

■ Under this set of facts, I cannot say that the plaintiff has borne the burden of proving that Atlee carried out the assault while acting within the scope of his employment. Atlee acted beyond

the scope of that employment, even though on his employer's premises and during his working hours. He deviated fully from his usual duties and for personal and bad motives tortiously beat the plaintiff.

I hold that it is not proved that the defendant, Ricca, had responsibility under the doctrine of respondeat superior under the facts here existent.

As to the defendant Atlee, judgment will be entered holding him liable for damages to be later proved according to the pre-trial order. As to the defendant, Ricca, the complaint must be dismissed. This opinion will serve as Findings of Fact and Conclusions of Law as provided in the Federal Rules of Civil Procedure. Defendant will promptly prepare and submit a suitable order.