**Elizabeth BERRETTONI and Barry Berrettoni, a minor, by Elizabeth Berrettoni, his guardian ad litem, Plaintiffs,**

**v.**

**UNITED STATES of America, and Ronald Neil Searles, Defendants.**

**Civ. No. 1367.**

United States District Court
D. Montana,
Butte Division.
Feb. 16, 1967.

Berg, O'Connell & Angel, Bozeman, Mont., for plaintiffs.

Moody Brickett, U. S. Atty., Butte, Mont., for the United States.

M. J. Doepker, of Doepker & Hennessey, Butte, Mont., for defendant Ronald Neil Searles.

## MEMORANDUM AND ORDER

MURRAY, Senior District Judge.

Plaintiffs allege they received injuries as a result of the negligence of the defendant Ronald Neil Searles in operating an automobile owned by him in such a manner as to force the vehicle in which the plaintiffs were riding off of the highway. They further allege that at the time of the mishap the defendant Searles was an Airman in the U. S. Air Force and was acting within the line of duty and the scope of his office or employment, and that, therefore, the defendant United States of America is liable for their injuries under the doctrine of respondeat superior.

After answering, the defendant United States moved for summary judgment on the ground that the complaint fails to state a claim against the United States upon which relief can be granted and that plaintiffs have no cause of action as a matter of law. In support of the motion the United States also filed a sworn statement by the defendant Airman Searles, a copy of travel orders issued by the Air Force to Airman Searles, copy of extracts from Air Force Manual 10–3 entitled "Administrative Orders" with an affidavit by a Colonel Hight of the Air Force explaining the abbreviations used in Airman Searles' orders and interpreting those orders; and a copy of Air Force Manual 35–22 entitled "Leave", with amendments.

The government's sole contention in support of its motion is that under the facts as they are shown to exist by the affidavits and exhibits filed with the motion, and under the Montana law of respondeat superior, which the government and the plaintiffs agree is controlling (see Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761), Searles was not acting within the course and scope of his employment at the time of the accident, and therefore, the government is not responsible for his alleged negligence.

From the evidence submitted in support of the motion, which is without conflict and uncontradicted, the following facts appear:

On June 16, 1964, Airman Searles left Keesler Air Force Base, Mississippi, on permanent change of station orders transferring him to Ellsworth Air Force Base, South Dakota. In those orders Searles was authorized to travel by privately owned automobile and was granted 30 days delay in reporting, chargeable as leave and an additional six days travel time, not chargeable as leave. He was required to report at Ellsworth not later than July 21, 1964. He proceeded from Keesler AFB to his home in Oregon, where he spent his leave, and he was enroute from his home in Oregon to Ellsworth AFB, when the accident in question occurred on July 20, 1964, about 15 miles west of Three Forks, Montana, on

U. S. Highway 10. The Air Force knew of Searles intended trip to Oregon for it was advised of the address while on leave.

Relevant excerpts from Air Force Manual 35–22 concerning leave in effect on July 20, 1964, provide:

"A delay enroute authorized in orders will be counted as leave and so charged. Official travel time granted in conjunction with a delay enroute is not chargeable as leave." (AFM 35–22 dated 9/1/59, Chap. 1, para. 9 (f) p. 4)

\*　\*　\*　\*　\*　\*

"When leave is granted as delay en route in permanent changes of stations or temporary duty orders, the time for official travel otherwise allowed in such orders will not be charged as leave." (AFM 35–22 dated 9/1/59, Chap. 2, para. 16, p. 8.)

With regard to computing leave and travel time, the Manual provides:

"In an instance where delay en route or emergency leave is granted in orders which also authorized official travel time, the day of departure from the last duty station is the first day of leave; the day following expiration of authorized days of delay en route or emergency leave is the first day of official travel time; and the day of reporting to the new station (or, when applicable, day of return to organization of assignment in the case of emergency leave transfers) is a day of duty." (AFM 35–22, dated 9/1/59, Attachment 1, page 27).

Under these provisions of the Air Force Manual on leave, Airman Searles was not on a leave status at the time of the accident, but was on official travel status. His first day of leave would have been June 16, 1964, the day of his departure from Keesler AFB (and his leave would have expired July 15, 1964. His six days official travel time would have commenced on July 16th, and the accident occurred July 20th.

In these circumstances and under Montana law, Searles was acting within the course and scope of his employment as an Air Force Airman at the time of the accident.

Had Airman Searles accomplished his transfer of permanent duty station by traveling directly from Keesler AFB to Ellsworth AFB with no authorized delay in reporting, and had the accident occurred during that journey, there could be no question but that he would have been acting within the course of his employment. In Callaway v. Garber, 289 F.2d 171 (1961), appealed from this court and controlled by Montana law, the Court of Appeals for the Ninth Circuit stated at 173:

"His travel at the time of the injury was incident to service. Without travel he could not respond to the orders of his superiors. The object of the orders was to provide training. The place where that training was to be provided was at a distance from his base. *The travel was as much a part of his duty as the training itself.*

In Callaway the court was discussing "activity incident to service" rather than "scope of employment", the former being a much broader concept than the latter. However, Searles could not have responded to his superior's order to report to Ellsworth AFB without traveling from Keesler to Ellsworth, and it would seem that that travel was as much a part of his duty and within the scope of his employment as reporting at Ellsworth. The Montana cases so hold.

In Webster v. Mountain States T. & T. Co., 108 Mont. 188, 89 P.2d 602, one Morrison, an employee of the defendant company, finished his work for the company at Roundup, Montana, at about noon on a Friday, and was ordered by the company to report for work the following Monday at Miles City, Montana. He could have made the trip from Roundup to Miles City in a truck furnished by the defendant company for that purpose, but chose instead to drive his own personal car and transport his family. He paid all of the expenses of operating the automobile, and the court pointed out that

"he was free to make any choice of routes and make the trip on any day in the interim (between Friday afternoon and Monday morning) that suited his convenience." On the trip Morrison negligently struck the plaintiff with his car and plaintiff sued, and in the course of affirming a judgment for the plaintiff, the Montana Supreme Court stated in part at page 605 of 89 P.2d as follows:

"Additionally, Morrison in making the trip to Miles City was acting in obedience to the command of the defendant company to report there for duty. Where, as here, it authorized the employee to use his own car for the purpose of transporting himself, the employee in so doing was acting within the scope of the business of the employer. The rule is well established by the great weight of authority that the servant's negligent use of his own car in the service of the employer, by the express or implied authorization of the employer, renders the employer liable for injuries sustained by a third person as a result thereof. See Note in 87 A.L.R. 787, 57 A.L.R. 739, and 112 A.L.R. 920."

See also Meinecke v. Intermountain Transportation Co., 101 Mont. 315, 55 P.2d 680 and Doheney v. Coverdale, 104 Mont. 534, 68 P.2d 142.

The government contends, however, that by reason of the fact Searles was granted 30 days leave and also because he was not on a direct route between Keesler and Ellsworth, the result should be different.

As to whether Searles was on leave, under the Air Force's own regulations, his leave had expired at the time of the accident and he was in an official travel status, not chargeable as leave, at that time. No doubt, if the accident had happened between Keesler and Searles' home in Oregon at a time when he was officially on leave, the result might be different, but the leave had expired and he was on official travel time.

As for the deviation from the direct route, in the Webster case, supra, the Montana Supreme Court pointed out that Morrison was free to choose any route he wished and travel on any day he desired between Friday and Monday and these choices of route and time were not found to change the result. In speaking of deviations from directions by an employee in carrying out the employer's business, in Staff v. Montana Petroleum Company, 88 Mont. 145, 291 P. 1042 at 1045, the Montana Supreme Court said:

"A servant may abandon his master's employment for the time to accomplish some purpose of his own. If in accomplishing this purpose he does an injury to another, his master is not liable; but a mere deviation from the master's directions with reference to the business in which he is employed is not an abandonment of his employment, and so long as he is doing some act in furtherance thereof he will be regarded as acting within its scope, and the master will not be excused on the ground that he did not authorize the particular act, or that he had no knowledge of it, or that in doing it the servant exceeded his authority."

Searles definitely had not abandoned his employment as an airman at the time of the accident. On the contrary, he was in the process of carrying out that employment by proceeding to Ellsworth to report, and his deviation from the direct route was with the knowledge and consent of the Air Force.

In the Webster case, supra, 89 P.2d at page 605, the Montana Supreme Court quoted with approval from the New York case of Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 183 as follows:

"The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. (Citing case). If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been cancelled upon failure of the private purpose, though the busi-

ness errand was undone, the travel is then personal, and personal the risk."

Here the only purpose of Searles' travel toward Ellsworth at the time of the accident was the business purpose. There was no personal purpose involved.

The court recognizes that there are many federal cases which apparently reach a different result from that reached here on similar facts, which have been cited by the parties, as well as many other federal cases which are in accord with the result here. As pointed out, the law of the state where the accident occurred controls, and the differences in the law of the various states with regard to the doctrine of respondeat superior no doubt explains the conflict in the federal decisions. At any rate, it would profit nothing to try to analyze those conflicting federal decisions, because it is Montana law that is decisive here.

For the foregoing reasons, the motion of the defendant United States of America for summary judgment is denied, and it is so ordered.