Ellis McGARRH, Plaintiff,

v.

**UNITED STATES of America,
Defendant.**

No. DC 6557–K.

United States District Court
N. D. Mississippi,
Delta Division.

Jan. 2, 1969.

Charles L. Sullivan, Clarksdale, Miss., for plaintiff.

H. M. Ray, U. S. Atty., Oxford, Miss., for defendant.

## OPINION OF THE COURT

KEADY, Chief Judge.

This suit is filed under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), to recover damages for serious injuries allegedly suffered by plaintiff when his automobile struck the rear-end of an automobile driven by Private First Class Jesse D. Morrell, III, a soldier of United States Army, then in leave status and under orders transferring him from one duty station to another. The United States has moved for summary judgment under Rule 56(b) F.R.Civ.P., contending that it is entitled to judgment as a matter of law inasmuch as Morrell was then acting outside the scope of his employment, or line of duty. The sole issue for consideration at this juncture is whether at the time of the accident Morrell was acting within the scope of his employment or line of duty; and we do not reach the question of tortious conduct vel non on the part of the serviceman.

The undisputed material facts relating to the question for decision are set forth briefly as follows: Under permanent change of station orders dated April 27, 1965, Private Morrell was transferred from Fort Detrick, at Frederick, Maryland, to Oakland, California, for overseas assignment. He was required to report in Oakland on June 13, 1965. He was granted 20 days delay en route, or leave [1] at home or other address within the continental United States, plus 7 days travel time to report in Oakland.[2]

---

1. 10 U.S.C. § 704 provides that by appropriate regulation "leave" may be taken by a serviceman "as vacation or absence from duty with pay". Army Regulation, A.R. 630.5, provides:

"13. Delay en route.

a. Leave granted in conjunction with permanent change of station or temporary duty orders will be incorporated in orders issued and referred to as delay en route. In such cases (DDALV) commences on the official date of departure from the home station unless otherwise specified in the orders."

2. 37 U.S.C. § 404 provides that by appropriate regulation a member of a uniformed service is entitled to travel allowance "upon a change of permanent station * * *", with the amount not to exceed a monetary allowance in place of the cost of transportation not more than 7¢ [formerly 6¢] a mile "based on distances established, over the shortest usually traveled route, under mileage tables prepared under the direction of the Secretary of the Army."

The following Army regulations, A.R. 37-106, are pertinent:

"6-2. Authorized Travel Time.

The authorized travel time is the number of days necessary and required for official travel computed in accordance with this chapter. The member is in a duty status while performing official travel.

"6-3. Time in Excess of Authorized Travel Time.

Any time utilized by a service member for delays, stopovers, or circuitous travel, in excess of the travel time authorized by this regulation, will be charged against the member's leave account.

"6-4. Distances.

a. General. The official tables of distances * * * will be used in computing authorized travel time between duty stations or points of travel.

b. Use of Common Carrier and Highway Distances.

* * * * *

(2) The official highway distance will be used for all travel between points listed in (2) above [Temporary station] when the travel is performed entirely by privately owned conveyance.

"6-23. Travel by Privately Owned Conveyance.

For travel performed by privately owned conveyance 300 miles per day will be the rate used for computation. The official highway distance between the duty stations or the duty station and aerial or water port of embarkation or debarkation divided by 300 miles will be the authorized travel time. A fraction of 300 miles which is 150 miles or more will be credited as 1 day for travel time purposes.

"6-30. Travel Time and Leave-Elapsed Time Between Stations.

a. General. Travel time will be stated in whole calendar days (midnight to midnight) as distinguished from the computation of per diem in which calendar days may be divided into quarterly periods.

On May 18, 1965, at 1 a. m., Private Morrell signed out on the official personnel register at Fort Detrick, Maryland, giving his home in New Orleans, Louisiana, as his leave address, and proceeded by his privately owned automobile toward New Orleans. The Army was unaware after his sign-out what route he was taking to eventually reach Oakland, the time, mode or other particulars of his travel. These matters were wholly decided by Morrell, but he was paid a lump sum for his travel expenses, which covered the mileage figured directly from Fort Detrick to Oakland, and did not include the extra mileage necessary to reach his home in New Orleans. On May 19, 1965, at approximately 3:45 a. m. on U. S. Highway 51 in Holmes County, which is situated in Central Mississippi, the southbound automobile driven by Private Morrell was involved in a collision with an automobile then being operated by plaintiff. Morrell was then en route to New Orleans, where he planned to visit his family and get his personal affairs in order before reporting for duty at his California station.

■■■ Liability of the government is predicated upon the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq.

Since the accident occurred in Mississippi we must look to the laws of that state to determine whether Morrell was acting within the scope of his employment or line of duty.[3] Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955). The precise question to be decided is this: Under Mississippi law is a private employer liable for the negligent conduct of an employee who, during his period of travel from one place of employment to another, has an accident while attending to matters of personal concern to the employee? We must choose the rule which we believe the Supreme Court of Mississippi would apply, were it faced with facts precisely the same as those in the case at bar.

Cases arising from accidents involving servicemen traveling by privately owned automobile between permanent duty stations are not novel to the Federal Courts. The holdings in the various Circuits are irreconcilable, largely because they have applied the diverse laws of the several states. As a general rule, the government has been held liable when the serviceman, at the time of the accident, was in travel status proceeding directly from one duty station to another. See, e. g., Hinson v. United States, 257 F.2d 178

The number of whole days obtained will be used in determining whether any excess time was used by the member for personal reasons, delays, stopovers, circuitous travel, and for establishing the closing leave entry.

b. Elapsed Time. The number of days of leave requested * * * or the number of days of delay en route authorized in the orders, the period of absence as shown on the morning report, the estimated travel time if shown in the orders, the days spent at a leave point(s) as shown on the itinerary, and the day(s) of arrival, departure, or awaiting transportation at a port or transfer activity are not fixed dates to be dounted as days of travel or days of absence. Elapsed time is the period which begins with day of departure from the old duty station (day of leave) and ends with day prior to day of reporting at the new duty station. The day of reporting is a day of duty. Elapsed time includes both leave and travel time. *Specific days involved in the period of elapsed time cannot ar-*

*bitrarily be designated as days of travel or leave since the specific days utilized are not always the same calendar days as are authorized and allowed as travel time or leave. Official travel time immediately precedes the day of reporting. The remainder of the elapsed time is chargeable as leave.*" (Emphasis added).

3. The term "acting in line of duty" is synonymous with "acting within the scope of * * * employment", 28 U.S.C. § 2671; United States v. Campbell, (5 Cir. 1949), 172 F.2d 500, cert. denied, 337 U.S. 957, 69 S.Ct. 1532, 93 L.Ed. 1757; Merritt v. United States, (1 Cir. 1964), 332 F.2d 397.

"The unique over-all control which the military service has over its members does not expand the legal doctrine of respondeat superior beyond scope of employment as applied in the applicable state law for determining the liability of a private employer." Bissell v. McElligott, (8 Cir. 1966), 369 F.2d 115. Cf. United States v. Campbell, supra.

(5 Cir. 1958); United States v. Mraz, 255 F.2d 115 (10 Cir. 1958); Cooner v. United States, 276 F.2d 220 (4 Cir. 1960). Courts of Appeal for other Circuits have reached opposite conclusions under similar circumstances. Chapin v. United States, 258 F.2d 465 (9 Cir. 1958), cert. denied, 359 U.S. 924, 79 S.Ct. 607, 3 L.Ed.2d 627 (1959); United States v. Sharpe, 189 F.2d 239 (4 Cir. 1951). Most courts, however, have denied relief in cases where accidents have occurred while the serviceman was on leave or in delay en route status. United States v. Eleazer, 177 F.2d 914 (4 Cir. 1949), cert. denied, 339 U.S. 903, 70 S.Ct. 517, 94 L.Ed. 1333 (1950); Cobb v. Kumm, 367 F.2d 132 (7 Cir. 1966); Noe v. United States, 136 F.Supp. 639 (E.D. Tenn.1956); Kunkler v. United States, 295 F.2d 370 (5 Cir. 1961). United States v. Kennedy, 230 F.2d 674 (9 Cir. 1956) holds to the contrary. District Court cases holding to the same effect are Berrettoni v. United States, 263 F. Supp. 907 (D.Mont.1967); Courtright v. Pittman, 264 F.Supp. 114 (D.Colo.1967); and O'Brien v. United States, 236 F.Supp. 792 (D.Maine N.D.1964). The last opinion contains an excellent analysis of the divergent views of the law in this area. It is to be noted that in cases imposing liability, the serviceman on leave was found to be traveling on a direct course to his new duty station at time of the accident.

■■■ We find no Mississippi case directly in point, as involving an employer's liability to third person for the negligent conduct of an employee under the circumstances here presented. However, closely analogous are the so-called "deviation" cases wherein an employee, initially on a mission within the scope of his employment, deviates therefrom to pursue a personal errand, and, before resuming his master's business, he is involved in an accident. Where the deviation is slight and not unusual, the employee is held to be engaged in his employer's business; but if the deviation is very marked and unusual, the employee is held not to be at all on his em-

ployer's business but solely on his own. While the degree of the deviation is ordinarily a question of fact, it becomes solely one of law, where the basic, material facts are not in issue, as is true in the case sub judice. Therefore, we hold that this case is properly for summary judgment disposition and the government should prevail.

An early Mississippi case establishing a foundation rule which limits the doctrine of respondeat superior is Canton Cotton Warehouse Co. v. Pool, 78 Miss. 148, 157, 28 So. 823 (1900), where the Court declared as follows:

"The inquiry is not whether the act in question, in any case, was done, so far as time is concerned, while the servant was engaged in the master's business, nor as to mode or manner of doing it,—whether in doing the act he uses the appliances of the master, —but whether, from the nature of the act itself *as actually done*, it was an act done in the master's business, or wholly disconnected therefrom by the servant, not as servant, but as an individual on his own account." (Emphasis added)

This test was relied upon and expanded in the oft-cited case of Barmore v. Vicksburg, S. & P. Ry. Co., 85 Miss. 426, 38 So. 210, 70 L.R.A. 627 (1905), involving facts not helpful here but turning upon a resumption of duty by an employee who had previously deviated to carry out a personal mission. The Court stated:

"In determining whether a particular act is committed by a servant within the scope of his employment, the decisive question is not whether the servant was acting in accordance with the instructions of the master, but, was he *at the time* doing any act in furtherance of his master's business? If a servant, having completed his duty to his master, then proceeds to prosecute some private purpose of his own, the master is not liable; but if the servant, while engaged about his master's business, merely deviates from the direct line of duty to

accomplish some personal end, the master's responsibility may be suspended, but it is re-established when the servant resumes his duty." (Emphasis added)

Thus, the employer has been held responsible where the deviation of the employee has been regarded as slight or minor, as held in Southern Bell Telephone & Telegraph Co. v. Quick, 167 Miss. 438, 149 So. 107 (1933); Colotta v. Phillips, 226 Miss. 870, 85 So.2d 574 (1956).

But where the deviation is major or amounts to a total departure from the scope of employment, the employer has been relieved of responsibility, as illustrated by Shell Petroleum Corp. v. Kennedy, 167 Miss. 305, 141 So. 335 (1932); Bourgeois v. Mississippi School Supply Co., 170 Miss. 310, 155 So. 209 (1934); Stovall v. Jepsen, 195 Miss. 115, 13 So. 2d 229 (1943); Kramer Service v. Robinson, 201 Miss. 805, 29 So.2d 456 (1947); Simmons v. James, 210 Miss. 515, 49 So.2d 839 (1951); Lovett Motor Company v. Walley, 217 Miss. 384, 64 So.2d 370 (1953). In Jepsen, 13 So. 2d at p. 230, the rule of "major deviation" was succinctly recast in these words:

"If a servant steps aside from the master's business for some purpose of his own disconnected from his employment, the relationship of master and servant is temporarily suspended and 'this is so no matter how short the time, and the master is not liable for his acts during such time'." [Citing authorities].

Major deviation cases involving servicemen have in two instances been decided by the Fifth Circuit Court of Appeals, and in each case the government was exonerated of liability.[4] Applying Georgia law, the Court in Cannon v. United States, 243 F.2d 71 (5 Cir. 1957), ruled that a serviceman using an army truck deviated from the scope of his employment when he drove the truck on a personal errand in a direction opposite to that called for by his duty. Even more factually in point is Kunkler v. United States, 295 F.2d 370 (5 Cir. 1961), which involved an application of Florida law. In Kunkler, an airman was ordered to travel from Biloxi, Mississippi, to Montgomery, Alabama—a distance of approximately 250 miles in a northeasterly direction—for which trip he was given an allowance of one day's pay, and "delay in route". Instead of proceeding directly to his appointed destination, he drove first to his home in Vermont, and then back to DeLand, Florida, to visit his grandparents. When he departed DeLand for Montgomery, he was approximately 456 miles from his destination and about 37½ hours from his reporting time at Montgomery. This deviation was held to have been a marked, or more than slight, one with respect both to distance and time. The action of the trial court granting summary judgment in favor of the government was upheld. It is interesting to note that the learned District Judge in his opinion, Kunkler v. United States, 187 F.Supp. 816 (D.C.1960), relied upon as controlling a Florida decision which, in turn, recognized the Mississippi Barmore decision as one of the leading cases in the country on the subject.[5]

Tested by the foregoing determinative rules, there can be no room for

---

4. We do not overlook a contrary result in Hinson v. United States, 257 F.2d 178 (5 Cir. 1958). No deviation was there involved and the soldier was *at the time of the accident* performing a specific duty assigned to him by directly traveling to his new station.

5. Western Union Telegraph Co. v. Michel, 120 Fla. 511, 163 So. 86 (1935): "The concluding and primary question argued here is whether or not when the defendant's employée, Long, left his master's business and went home to lunch he was guilty of a mere slight deviation from the master's business, or did his conduct in so departing amount to an abandonment and the undertaking of a project that had no relation to his master's business?

"The rule is well settled that the master is responsible for the torts committed by his servant in the scope or range of his

doubt that Private Morrell at the time of his accident had wholly departed from the scope of his employment. While he was a member of the United States Army and was under orders to go to a new post of duty, the fact remains that he had been granted leave and was free from performing any official duties at the time the casualty occurred. Having received permission to go home, he was doing just that. He was on, and headed toward, a vacation to be enjoyed without mixing of military duties. Unless and until his orders were changed, and they had not been at the time of the accident, Morrell had a number of days to spend visiting at home in New Orleans, relaxing and attending to his personal affairs. The government had absolutely no interest in or concern with his travel to his home while he was on leave status, nor what he would do while at home. At the moment, time and place this accident occurred, the government had no present right of control, nor did it undertake to exercise any actual control over the movement, the route or time of travel of Morrell. True, he had been directed to go to Oakland by a time certain, but the government was concerned, at best, only with that portion of travel which lay in a direct route between Fort Detrick, Maryland, and Oakland, California. If it be conceded that Private Morrell would have been on official duty while traveling in a direct route to his new station, the fact remains that he wholly turned aside from such duty and employed or utilized his time, as he had the right to do under Army regulations, by traveling in a circuitous route and in a radically different, and longer, direction solely for his own and personal purposes. Under no view of the facts can it be said that the deviation had ter-

minated at the time of this accident so as to produce a resumption of the scope of his employment. There can be no responsibility upon the government for acts occurring by an employee wholly disassociated and disconnected from the scope of his employment, and accordingly the conduct of Private Morrell at the time of this accident, even if tortious, is not chargeable to the government.

Plaintiff urges upon us that Mississippi adheres to the "dual purpose" rule of joint or mutual interest, and that its highest Court has repeatedly held that so long as there is a business purpose for an undertaking, it is immaterial that the employee may join therewith a personal errand, and the employer will be liable for acts committed by such employee during that period of time, and this is true although the predominant purpose of the mission be one personal to the employee. See, e. g., Primos v. Gulfport Laundry and Cleaning Company, 157 Miss. 770, 128 So. 507 (1930); Brookhaven Steam Laundry et al. v. Watts et al., 214 Miss. 569, 55 So.2d 381, 59 So. 2d 294 (1952). This rule of liability cannot come into play, however, when the undisputed facts show that, at the critical time, the employee is serving no interests whatsoever of his employer.

In the case at bar, the interest of the government in having Private Morrell eventually, and after his leave had expired, reach Oakland, California, does not provide a basis for invoking the "dual purpose" rule on a theory that such a concern of the government accompanied the serviceman at all times during his journey, so as to make applicable its vicarious liability as an employer, regardless of how great, total or complete might be his deviation both as to time and place. Equally without

employment. He is also liable for those committed in a slight deviation or departure from his business, but when the deviation or departure of the servant amounts to an abandonment of the master's business and the undertaking of an enterprise or mission of his own without the master's consent, knowledge, or approval, and having no relation to the master's business, then the master cannot be held liable for torts so committed. Barmore v. Vicksburg, S. & P. R. Co., 85 Miss. 426, 38 So. 210, 70 L.R.A. 627, 3 Ann.Cas. 594, is one of the leading cases in the country on this point and is very instructive on the subject. [Other cases cited]."

merit is the contention that Morrell was, in part, serving his employer by going to New Orleans to get his personal affairs in order. It is inescapably clear that the permission inherent in the leave of absence granted to this serviceman by the United States Army did not make it a participant in his personal activities at the time and place of the accident upon which plaintiff has based his suit.

Judgment will be entered for the government accordingly.