Nick PLATIS, Appellee,

v.

UNITED STATES, Appellant.

Kenneth JONES, Appellee,

v.

UNITED STATES, Appellant.

George MARICICH, Jr., Appellee,

v.

UNITED STATES, Appellant.

Helen DAY and Roban Day, Appellees,

v.

UNITED STATES, Appellant.

No. 43–68.

United States Court of Appeals
Tenth Circuit.

April 28, 1969.

Patricia S. Baptiste, Dept. of Justice, Washington, D. C. (Edwin L. Weisl, Jr., Asst. Atty. Gen., William T. Thurman, U. S. Atty., and Morton Hollander, Dept. of Justice, Washington, D. C., were with her on the brief) for appellant.

Paul N. Cotro-Manes and Tom G. Platis, Salt Lake City, Utah (Therald N. Jensen, Price, Utah, was with them on the brief) for appellees.

Before LEWIS, BREITENSTEIN and HICKEY, Circuit Judges.

LEWIS, Circuit Judge.

This appeal is taken by the United States after entry of judgments by the District Court for the District of Utah imposing liability on the government under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, for damages to appellees from personal injuries and wrongful death as the result of an automobile accident occurring near Greenriver, Utah, on June 25, 1965. The appeal probes generally the relationship existent between the United States and military personnel traveling under permanent change-of-station orders with delay en route authorized and the application of that status to the particular facts of the case and the state law of Utah.

On April 5, 1965, the United States Air Force issued Airman First Class Lonnie Williams a "Permanent Change-of-Station Order" transferring him from Ent Air Force Base, Colorado Springs, Colorado to Portland International Airport, Portland, Oregon. The order required Williams to report to his new duty station not later than August 1, 1965, and authorized travel by privately owned automobile with allowance of four days travel time. The order also permitted a delay en route "chargeable as ordinary leave provided it does not interfere with reporting on date specified and provided individual has sufficient accrued leave."

Pursuant to said orders and on June 24, 1965, Williams, driving his own automobile, left Colorado Springs en route to Portland. The following morning and while on direct route to Portland, Williams, at a point approximately four miles west of Greenriver, Utah, was involved in a head-on collision with an automobile driven by Norman Day and which resulted in the death of Day and serious personal injuries to his three passengers (appellees herein). The trial court found that "[t]he negligence of Airman Williams was the direct and proximate cause of the collision between the Williams automobile and the Day automobile" and that neither Norman Day nor his passengers were guilty of contributory negligence. These findings are not contested in this appeal.

■ Although Airman Williams at the time of the accident was traveling directly from Colorado Springs to Portland he did not intend, according to his own testimony, to report for duty immediately upon arrival at Portland. He did intend to drive directly to Portland and then continue to Rockaway, Oregon, and visit briefly with his wife's parents. Rockaway is approximately one hundred miles west of Portland and the direct route to each city is the same. Against this factual background of subjective intent and the nature of Williams' orders the United States asserts that at the time of the accident Williams was on leave, was acting entirely on his own, and was in no way furthering the interests of the United States. We consider this contention to be argumentative of what might have been possible

under Williams' orders but entirely faulty in view of what factually occurred. The trial court's conclusion that Williams was on travel status at the time of the accident finds ample support in the record. The record facts on this issue may be easily summarized.

Williams was ordered to proceed from Colorado Springs to Portland, Oregon;[1] he was specifically authorized to use his own automobile to comply with such order; he was on a direct route to his duty station, had not deviated from that route, and did not intend to until he reached Portland; such travel was designated by his orders as "necessary in the military service"; he was paid at the rate of six cents a mile from Colorado Springs to the point of the accident;[2] and he was charged with no leave time prior to the occurrence of the accident.

The next issue is whether Airman Williams, proceeding in the capacity and particular circumstances of military travel status, was an employee of the United States "acting within the scope of his office or employment." 28 U.S.C. § 1346(b). This issue must be determined by the principles of *respondeat superior* under the law of Utah, the place where the tort was committed. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761; United States v. Hainline, 10 Cir., 315 F.2d 153. But at the outset we must negative the persuasiveness or compulsion of state law as affecting the application of liability under the Federal Tort Claims Act for the torts of military personnel by analogy with traditional employer-employee relationships and the acts and duties in common business affairs. For example, the United States here argues that Airman Williams' military assignment was that of a draftsman and that he wasn't hired to drive a car. As a consequence, so says the government,

Williams was not performing a function for which he was hired and the United States cannot be held liable for his acts, citing Fowkes v. J. I. Case Threshing Machine Co., 46 Utah 502, 151 P. 53, and other Utah cases. The simple answer to this novel contention is that Williams was not hired at all. He was a member of the Armed Forces, nothing more and nothing less. And as such, he was here authorized by order to drive a car not only for his own benefit but also as "necessary in the military service." This relationship was set by federal law.

The law of Utah does determine the liability of the United States for torts of military personnel driving personal cars and may limit or eliminate such liability under varying circumstances affecting employer-employee relationships. In Carter v. Bessey, 97 Utah 427, 93 P.2d 490, 492, the Utah Supreme Court generalized:

"If the servant is about the master's business even though also attending to private affairs, he is within the scope of his employment and the master is liable. But when the servant, for purposes of his own or for purposes other than the master's business, is engaged in activity which has no relation to the master's business, to his employment, he has for such time departed from the scope of his employment and the master is not liable for his negligence. The rule has been stated in Shearman and Redfield on Negligence, 6th Ed., § 147a: 'One does not cease to be acting within the course of the master's employment because his most direct and immediate pursuit of the master's business is subject to necessary, usual or incidental personal acts, nor even by slight and immaterial delays or deflections from the most direct route for a personal or private purpose, the

---

1. The order does not explicitly direct Williams to travel to Portland but in requiring him to report there no later than August 1, 1965 such is the necessary implication of the order.

2. Members of the Air Force "are entitled to travel and transportation allowances * * * only while actually in a 'travel status' * * *." Air Force Regulations, Part B, Travel Status § 3050(1).

pursuit of the master's business continuing to be the controlling purpose. Such acts, not amounting to a turning aside completely from the master's business so as to be inconsistent with its pursuit, are often only what might be reasonably expected, to which, therefore the master's assent may be fairly assumed; or they are in many instances the mingling with the pursuit of the master's business some purpose of the servant's own.' "

■ The Utah high court later held that where an employee is using his own automobile "in the vital pursuit of not only his own" but his employer's business and the employer has the right to control the employee's use thereof, the employer is vicariously liable for injuries suffered by third parties as a result of the employee's negligent operation of said automobile. Chatelain v. Thackeray, 98 Utah 525, 100 P.2d 191, 201. The required control of the "employer" over the "employee" as applied to the operation of an automobile does not necessitate that the "employer" be able to physically control the use of the automobile but rather that he have the right to control its use and this is true even though "it would be, in fact, an impossibility to exercise" said right. Fox v. Lavender, 89 Utah 115, 56 P.2d 1049, 1051, 109 A.L.R. 105. In Chatelain, supra, the Utah Supreme Court was able to find an element of the right of control from the fact that the "employer" had the right to terminate the "employee's" employment upon thirty days' notice. In the subject case the Air Force in directing travel to the new permanent duty station had, although it did not exercise it, the power to prohibit the use of a privately owned vehicle, Air Force Reg., Part D, Permanent

Change-of-Station Allowances, M 4150 (4), to require travel by a direct and predetermined route, and to require that the travel be carried out with unnecessary delay. 10 U.S.C. § 892.[3] In addition thereto the Air Force has the power to subject its employees to military punishment for their reckless operation of a motor vehicle. 10 U.S.C. §§ 802 and 911.[4] Certain it is that the powers of the Air Force, as spelled out above, create a right of control as great as, if not greater than that present in *Chatelain*, supra.

■ We conclude, as did the trial court, that Airman Williams was engaged at the time of the accident in Air Force business and subject to its control and that no circumstance existed that would carve out an exception to the general liability imposed on an employer for the torts of an employee under Utah law. From similar facts this court has reached the same result under the law of New Mexico. United States v. Mraz, 255 F.2d 115.

■ In its docketing statement in this court the United States indicated dissatisfaction with the damage awards granted by the trial court. In its brief the government states only that its "decision not to brief the damage issue is not an abandonment of our assertion that the awards contain numerous errors." Such procedure is not proper either under Rule 28, Rules of Appellate Procedure, nor the decision of this court. Whitehead v. Salyer, 10 Cir., 346 F.2d 207, 209, n. 2. However, since public monies are involved, we have given consideration to the issue and find no reason to disturb the trial court's judgments.

Affirmed.

---

3. 10 U.S.C. § 892 in its pertinent part reads "Any person subject to this chapter who—(1) violates or fails to obey any lawful general order or regulation * * * shall be punished as a court-martial may direct."

4. 10 U.S.C. § 911 provides that "Any person subject to this chapter who operates any vehicle while drunk, or in a reckless or wanton manner, shall be punished as a court-martial may direct."