Dorothea E. McSWAIN and Stella McSparran, Administratrix of the Estate of Tracy L. McSwain, Deceased,

v.

UNITED STATES of America, Appellant,

v.

Herbert L. McSWAIN.

No. 17873.

United States Court of Appeals, Third Circuit.

Argued Dec. 16, 1969.

Decided Feb. 20, 1970.

Rehearing Denied March 26, 1970.

Patricia S. Baptiste, Dept. of Justice, Civil Division, Washington, D. C., (William D. Ruckelshaus, Asst. Atty. Gen., Louis C. Bechtle, U. S. Atty., Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

David Kanner, Kanner, Stein, Feinberg & Barol, Philadelphia, Pa. (Edward N. Barol, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, FREEDMAN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The issue in this case is whether the Government is liable for the negligent operation of an automobile by a serviceman travelling from one duty post to another, who for personal reasons did not use a direct route · between the two points.

In August, 1962, Corporal Herbert L. McSwain, of the United States Marine Corps, received orders transferring him from Camp Pendleton, California, to the Naval Air Technical Training Center in Memphis, Tennessee.[1] McSwain was authorized a delay enroute of twenty days chargeable as ordinary leave and four additional days for travel time, and was authorized to go by any means of transportation.

McSwain decided to use his own automobile and drive to the home of relatives in Philadelphia where he intended to leave his wife and infant daughter, to complete the trip to Memphis alone and to do some sight-seeing as they crossed the country. He was to be reimbursed for, mileage for himself and for his wife, calculated on the basis of the distance from Pendleton to Memphis.

The direct route from Pendleton to Memphis is due east through Arizona, New Mexico, Texas, Oklahoma and Arkansas. However, in accordance with his plans, McSwain, his wife, and daughter left Pendleton on August 29, 1962, driving in a northeasterly direction to Las Vegas, Nevada. After an overnight stop in Las Vegas, they drove through Arizona, stopped the next night in Utah and went into Colorado. On September 1, 1962, while driving east on Route 40, one mile west of Wild Horse, Colorado, McSwain apparently fell asleep, and his car veered off the road into a ditch. His daughter fell against the dashboard, and as a result of the injuries she sustained, died the following day. When the accident occurred, McSwain was 300 miles north of the direct east-west route between Camp Pendleton and Memphis.

Mrs. Dorothea McSwain, the child's mother and Stella McSparran, the administratrix of the child's estate, instituted this suit for damages under the Federal Tort Claims Act. The United States moved for summary judgment on the ground that the serviceman was not acting within the scope of his employment at· the time of the accident. The motion was denied by the district court, 291 F.Supp. 386. After trial, the district court held that the serviceman was acting within the scope of his employment, found he had negligently operated his car, and awarded judgment to the administratrix of the estate for $977.40 in the wrongful death action and $6,-522.60 in the survival action. This appeal, confined to the single question whether McSwain was acting within the scope of his employment when the accident occurred, followed.

Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674,[2] the

---

1. The orders required that McSwain report to his new post no later than September 25, 1962, but were later amended to September 30, 1962. The record does not make clear how the scheduled date of reporting was further postponed.

2. 28 U.S.C. § 1346(b):
"Subject to the provisions of chapter 171 of this title, the district courts, * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages,

United States is liable for injury caused by the negligent act of a government employee to the same extent a private employer would be liable. Such liability for the acts or omissions of a civilian or military federal employee is determined by the law of *respondeat superior* of the state in which the act or omission occurred. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L. Ed. 761 (1955).[3] Because the Federal Tort Claims Act requires that suits be brought in the federal courts, there cannot be a state case directly in point. Federal courts, however, have considered many similar suits and apply the most analogous state law. As a result, there are diverse views in the Courts of Appeals depending basically on the applicable state law, and to some extent on the particular factual situation. Although the traditional doctrine of *respondeat superior* may not be appropriate to the relationship between military personnel and the armed forces, we are constrained by legislative mandate to apply this concept.

In reaching his decision, Judge Weiner in the court below relied, as did Judge Troutman when he denied the Government's motion for summary judgment, on Courtright v. Pittman, 264 F. Supp. 114 (D.C.Colo.1967). *Courtright* interpreted Colorado state law in a case involving facts substantially similar to those here. There is, however, a significant distinction between the two cases which is crucial to the outcome in the present case.

*Courtright* was a suit under the Federal Tort Claims Act arising from the negligent operation of an automobile in Colorado by Pittman, a serviceman travelling from a duty post in Alaska to one in Colorado. Like McSwain, Pittman was authorized delay enroute and travel time, was accompanied by his wife and children, and compensated for the trip. Chief Judge Arraj, in the Colorado District Court, found that Pittman was "*travelling* on a direct route" and "was engaged in no sort of pleasurable 'frolic of his own.'" 264 F.Supp. at 120. The District Court here found that McSwain was "not [on] the most direct route from Camp Pendleton to Memphis." Instead, he was in Colorado because he had visited Las Vegas and was enroute to visit his wife's family in Philadelphia before reporting to Memphis. Although Judges Troutman and Weiner observed this factual distinction between the two cases, they did not believe it determinative. We disagree, and consider it controlling.

In United States v. Mraz, 255 F.2d 115 (10th Cir. 1958), cited by the court below, Judge Murrah stated that there are two basic philosophies of *respondeat superior*:

\* \* \* "There is doubtless a philosophical divergence in the theory that a master is not liable for the wrongful acts of his servant, unless done in re-

accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 2674:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for

interest prior to judgment or for punitive damages."

3. As stated by Judge Keady, in McGarrh v. United States, 294 F.Supp. 669, 671 (N.D.Miss.1969), in a suit based on the alleged negligence of a serviceman, "The precise question to be decided is this: Under Mississippi law is a private employer liable for the negligent conduct of an employee who, during his period of travel from one place of employment to another, has an accident while attending to matters of personal concern to the employee? We must choose the rule which we believe the Supreme Court of Mississippi would apply, were it faced with facts precisely the same as those in the case at bar."

spect to the very transaction out of which the injury arose, and the theory that a master is liable for his servant's negligent acts if done while engaged in the master's business and did not arise from some external, independent and personal motive on his part." 255 F.2d at 117.[4]

A primary issue for the Colorado District Court in *Courtright* was whether Colorado took the former or latter approach. Chief Judge Arraj in *Courtright* examined the law on this subject and particularly the applicable Colorado law. Relying in part on Hynes v. Donaldson, 155 Colo. 456, 395 P.2d 221 (1964), he concluded that Colorado followed the latter theory. Accordingly, *Courtright* is not authority for the position that Colorado law holds a master responsible for negligent acts of an employee that occur while the employee is making a trip in part for his employer's business but from which he has deviated for his own purposes.[5] Even under the second view discussed in *Mraz*, if the employer is to be held negligent, the negligent act must "not arise from some external, independent and personal motive." The language in *Courtright* that Pittman, the negligent serviceman, was "on a direct route" and not on a "pleasurable frolic of his own", and therefore substantially performing his employer's business, indicates a recognition of this position.

In *Courtright*, the Colorado District Court also referred to the Restatement of Agency, 2d. § 228; which provides:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master.

\* \* \* \* \* \*

The question of compliance with the Restatement in *Courtright* concerned subsection (a). It was clear in *Courtright*, and the Court so stated, that the requirements of (b) and (c) were met. There is nothing in the *Courtright* decision to indicate that the Court there did not consider all three requirements of the Restatement to be of equal importance.[6]

At the time of the accident here McSwain was in Colorado because of the "independent and personal motive" to go to Philadelphia after his visit to Las Vegas. Assuming his trip to Memphis was basically for his employer's purposes, the accident occurred at a place that was a substantial deviation geographically and was for McSwain's own purposes. Each of these factors

---

4. Federal courts have noted the distinction made by Chief Judge Murrah in United States v. Mraz, and have decided which view a particular state follows. *See e. g.* Myers v. United States, 219 F.Supp. 71 (W.D.Mo.1963), aff'd 331 F.2d 591 (8th Cir. 1964) (in accord with *Courtright* on Colorado law); Bissell v. McElligott, 248 F.Supp. 219 (W.D.Mo.1965) (distinguished Colorado law from Missouri law), aff'd 369 F.2d 115 (8th Cir. 1966), cert. denied, 387 U.S. 917, 87 S.Ct. 2029, 18 L.Ed.2d 969 (1967).

5. Gibbons & Reed Co. v. Howard, 129 Colo. 262, 269 P.2d 701 (1954), decided by the Supreme Court of Colorado *en banc*, indicates that Colorado would not take the position advanced by the plaintiffs here. *See also* Kirkpatrick v. McCarty, 112 Colo. 588, 152 P.2d 994

(1944), which stated that "where an agent steps aside from the principal's business to do an act not connected with the business, the relationship is suspended and the principal is not liable."

6. Plaintiff argues that Section 236 of the Restatement of Agency 2d "Conduct Actuated by Dual Purpose" should control this case: "Conduct may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person." Although Section 236 supports the position that driving to a new duty post is within the scope of employment of a serviceman because in so doing he is furthering his own and the Government's purposes, it does not control in the situation before us when a serviceman makes a substantial detour for his pleasure.

takes the accident outside the ambit of the *Courtright* rule.

Although there is a divergence of views in the Circuits with respect to the liability of the United States for the negligence of a serviceman travelling in his car to a permanent post, most of the cases which hold the Government responsible rely at least in part on the fact that the serviceman is on a substantially direct route to his new post. Platis v. United States, 409 F.2d 1009 (10th Cir. 1969) (Utah law); United States v. Myers, 331 F.2d 591 (8th Cir. 1964) (Colorado law); Cooner v. United States, 276 F.2d 220 (4th Cir. 1960) (New York law); Hinson v. United States, 257 F.2d 178 (5th Cir. 1958) (Georgia law); United States v. Mraz; O'Brien v. United States, 236 F.Supp. 792 (D.Maine, 1964) (Maine law).[7]

The occurrence of the accident on other than a direct route has influenced courts to exculpate the Government. Kunkler v. United States, 295 F.2d 370 (5th Cir. 1961) (applying Florida law); McGarrh v. United States, 294 F.Supp. 669 (N.D.Miss.1969).[8] In *Kunkler,* where the accident occurred in Florida

although the transfer was from a post in Mississippi to one in Alabama, the Court specifically distinguished *Hinson,* when the serviceman had followed a direct route. 295 F.2d at 372.

Plaintiffs argue that whether McSwain's deviation from the direct route to Memphis took him out of the scope of employment is a question of fact, and when so found by the court sitting without a jury may not, under Rule 52(a) of the Federal Rules of Civil Procedure, be upset "unless clearly erroneous." They point to findings of fact numbered 8, 12, 13 and 14 made by the Court below:

"8. It was their [the McSwains'] intention to first go to Philadelphia, Pennsylvania, where his wife and daughter were to stay with relatives and from where Corporal McSwain could continue his journey to Memphis.

"12. Corporal McSwain would not have been on his way east at all were it not pursuant to orders from his employer, the United States Government.

"13. Being impelled to travel east by personal motives and pursuant to orders simply creates a dual purpose situation.

7. The leading cases holding that a serviceman driving to a new permanent duty post *is not within the scope of his employment, regardless of the question of deviation from a direct route,* are Chapin v. United States, 258 F.2d 465 (9th Cir. 1958) cert. denied 359 U.S. 924, 79 S.Ct. 607, 3 L.Ed.2d 627, (1959) (California law), followed recently in United States v. McRoberts, 409 F.2d 195 (9th Cir. 1969) App.Pending (which involved a temporary transfer); United States v. Sharpe, 189 F.2d 239 (4th Cir. 1951) (South Carolina law); United States v. Eleazer, 177 F.2d 914 (4th Cir. 1949) cert. denied 339 U.S. 903, 70 S.Ct. 517, 94 L.Ed. 1333 (1950) (North Carolina law) followed in North Carolina State Highway Comm. v. United States, 406 F.2d 1330 (4th Cir. 1969) aff'g 288 F. Supp. 757 (E.D.N.C.1968) (North Carolina law). The position in these cases is that the use of an automobile by a serviceman travelling pursuant to change of duty orders serves his own purpose and not that of the Government. *Accord,* Cobb v. Kumm, 367 F.2d 132 (7th Cir.

1966) (Illinois law). *See generally* 52 A.L.R.2d 287.

8. *McGarrh* involved facts strikingly similar to those in the present case. A serviceman ordered from a base in Maryland to California was in an accident in Mississippi. He was in Mississippi because he was going to visit his home in Louisiana before reporting to the California base. The district court held that even accepting the liberal cases on the scope of employment of a serviceman as the law of Mississippi, namely that there may be recovery from the Government although the duties of servicemen in question do not require driving vehicles, he was not within the scope of his employment because a direct route is required even under these cases in order to impose liability. The Court in *McGarrh* cited *Courtright* and specifically noted that the serviceman was on a "direct route." *See also,* Kimball v. United States, 262 F.Supp. 509 (D.N.J. 1967). *But see* Berrettoni v. United States, 263 F.Supp. 907 (D.Mont.1967) (Montana law).

"14. The interests of the United States Government in effectuating a permanent change of duty station were being substantially furthered at the time of this accident."

■ Numbers 13 and 14 are the findings pertinent to plaintiffs' position. However, they are conclusions, and are not predicated on any specific evidence in the record. Hence, they are not subject to the provisions of Rule 52(a).

Plaintiffs also point to a stipulation by the parties to accept the findings of fact originally made by Judge Troutman, and argue that this stipulation bars the Government's challenge. The stipulation provides: "Defendant stipulates *to facts* set forth in Judge Troutman's opinion of October 28, 1968." (Emphasis added). In view of the precise wording, we consider the stipulation to be limited to the actual factual determinations made by Judge Troutman, rather than applicable to the conclusions involved in findings 13 and 14.

Accordingly, the judgment of the District Court will be reversed.

FREEDMAN, Circuit Judge (dissenting).

The law of Colorado, which we must apply under the Federal Tort Claims Act, is not clear. We therefore are free to choose what we consider the sounder of the competing policies underlying the decisions in cases such as this.

It is artificial at best to think of the normal doctrine of respondeat superior in the relation of military personnel to the Armed Forces. The elements of service and control which determine the relationship of master and servant have a far more comprehensive quality in the authority of military superiors over their subordinate personnel.

Corporal McSwain throughout his journey was a soldier under the control of the military authorities and was subject to military discipline, even in the manner in which he drove his automobile.[1] It is within the framework of this unique relationship of command and subordination that we must view this case. If the military authorities wished McSwain to take a direct route, they could have made this requirement in their orders. It is indicative of their intention to the contrary that they not only authorized him to make the journey in his own automobile and agreed to pay for his travel, but also granted him an extra 20 days of "delay" time in addition to the days authorized for travel time.[2] One would hardly expect that one who has been ordered to make a transcontinental journey and been authorized to do it in his own automobile accompanied by his wife[3] will hug the most direct route wearing blinders against a normal human interest in the country across which he is travelling. In these circumstances, the conclusion is justifiable that his superiors intended him to combine pleasure with his duty and impliedly authorized him to make an appropriate amount of deviation for purposes of sightseeing as he travelled across the continent.

Moreover, the military authorities knew that McSwain would be required to take East with him his wife and child who had been living with him in California. They also knew that his transfer to Memphis, Tennessee, was to be of short duration and that he was to retransfer from there to Florida. It was a normal act, readily foreseeable, that he would leave his wife and child with relatives while he was temporarily in Memphis. Thus when he took them to Philadelphia to stay with relatives, this was a normal incident to his transfer from

---

1. See Uniform Code of Military Justice, 10 U.S.C. § 911, subjecting military personnel to discipline for reckless driving. Cf. O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

2. In the government's phraseology McSwain was authorized four days "pro-

ceed time," twenty days "delay to count as leave," and eight days "travel time."

3. The district court found that McSwain "was to be reimbursed by his employer for mileage to his new duty station at the rate of six cents a mile for himself and six cents a mile for his wife."

Camp Pendleton to Memphis. The "deviation" in so doing, whatever it may have aggregated in mileage, was neither unreasonable nor beyond what military authorities should reasonably have anticipated.

As I see it, therefore, the generality of the orders given to Corporal McSwain, the time period allotted to him within which to make the journey, the authorization to use his own automobile and to be paid mileage for him and his wife, the knowledge of his superiors that he would necessarily make some arrangements for the temporary lodging of his wife and child, all unite to render justifiable the conclusion of the district court that the journey on which he was bound lay within the authorized scope of his employment and within the line of his duty. The United States, therefore, was responsible for any negligence of McSwain during the journey, even though he was actuated in part by personal considerations.[4]

The choice lies with the military authorities in cases such as this whether the government is to be held liable for the negligence of military personnel which causes injury to others. They have complete command over the activities of their subordinate personnel; they can limit and even curtail entirely their right to drive automobiles when transferring from one base to another; by denying extra leave they can prevent the mingling of recreation or vacation with military duty; and by directing the route of travel they can restrict deviation. With these limitations at their disposal, their failure to employ them here indicates that they intended Corporal McSwain to travel under their orders with a broad delegation of authority while they retained their right of control. This justifies the conclusion of the district court that the journey was made within the scope of McSwain's employment and within the line of his duty.

I therefore would affirm the judgment of the district court.

---

4. See Restatement of Agency, 2d, § 228(c).